DA 13-0376

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 54

---

MICHAEL H. DITTON,

        Petitioner and Appellant,

  v.

DEPARTMENT OF JUSTICE MOTOR
VEHICLE DIVISION STATE OF MONTANA,

        Respondent and Appellee.

---

APPEAL FROM:     District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 10-820C
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Michael H. Ditton, Self-Represented, Bozeman, Montana

        For Appellee:

        Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

        Susan Wordal, Assistant City Attorney, Bozeman, Montana

---

        Submitted on Briefs:  January 2, 2014
                 Decided:  March 4, 2014

Filed:

_____
                    Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1　Michael H. Ditton appeals from the order of the Eighteenth Judicial District Court, Gallatin County, denying his petition for reinstatement of his driver's license.  We affirm.

¶2　We restate the issues on appeal as follows:

1.  Did the District Court err in denying Ditton's request for the entry of default judgment against the State?

2.  Did the District Court abuse its discretion when it vacated its order granting judgment in favor of Ditton following his acquittal of the underlying offense?

3.  Did the District Court err in denying Ditton's petition for reinstatement of his driver's license?

4.  Were Ditton's constitutional rights to due process and privacy violated?

**BACKGROUND**

¶3　On August 3, 2010, at approximately 9:30 p.m., Bozeman City Police Officer Joe Swanson responded to an accident involving a vehicle hitting a building.  The damaged building, Bozeman Printing Company, is located at 702 West Main in Bozeman.  Officer Swanson was the first to arrive at the scene of the accident, which was in the alley between Bozeman Printing Company and the Molly Brown Bar.  The Scoop Bar and the Haufbrau are also located nearby.  Officer Swanson observed a pickup truck backed up against the Bozeman Printing Company building.  The truck appeared to have backed into the building and caused damage after crossing over a cement curb stop.

¶4　While Officer Swanson was examining the scene, Ditton approached him from behind the truck.  Ditton's hands were over his head, displaying an attitude of surrender, and he stated something to the effect of, "I'm the one you're looking for.  It's me."

Officer Swanson interpreted Ditton's actions and statement as indicating that he had been driving the truck when it hit the building. Officer Swanson testified that, in his experience, it is rare for a person to approach an officer in such a situation and indicate that he or she had been driving the vehicle in question when in fact the person had not been driving it. Officer Swanson spoke to Ditton briefly, asking whether Ditton was injured and needed assistance. Ditton indicated that he was fine, with no injuries.

¶5 Officer Tracy Senenfelder arrived at the scene shortly after Officer Swanson. Officer Senenfelder observed that the building had been damaged, that the back bumper of the truck was next to the building, and that the rear tires of the truck were over the cement curb stop, which was consistent with the vehicle striking the building. Officer Senenfelder spoke with Officer Swanson and learned that Ditton had approached Officer Swanson with his hands raised over his head, stating that "I'm the one you're looking for." In speaking with Ditton, Officer Senenfelder noted that Ditton had the odor of an alcoholic beverage coming from his person, that Ditton's eyes were bloodshot and glassy, that Ditton's speech was slurred, and that Ditton was unsteady on his feet. Based on these factors, Officer Senenfelder had Ditton perform several field sobriety maneuvers.

¶6 Ditton scored six out of six, the highest possible score indicating intoxication, on the Horizontal Gaze Nystagmus test, and eight out of eight, the highest possible score indicating intoxication, on the walk-and-turn maneuver. Ditton was unable to recite the alphabet beginning with the letter "D." Officer Senenfelder did not ask Ditton to do the one-leg stand due to Ditton's lack of balance and inability to stand without stumbling and swaying. Moreover, Ditton indicated that he could not perform the one-leg stand because

3

of his blood sugar related to his diabetes. Based on his observations, Officer Senenfelder read Ditton the implied consent advisory (*see* § 61-8-402, MCA) and requested that Ditton perform a preliminary breath test. After Ditton refused this test, Office Senenfelder placed Ditton under arrest for driving under the influence of alcohol (DUI), in violation of § 61-8-401, MCA.

¶7 Before bringing Ditton to the detention center, Officer Senenfelder drove Ditton to Bozeman Deaconess Hospital so that medical staff could evaluate Ditton's diabetes and clear him for incarceration. While at the hospital, Officer Senenfelder read Ditton the implied consent advisory a second time and asked him to submit to a blood test. Ditton refused the requested blood test. As part of their examination of Ditton, medical staff tested Ditton's blood. Officer Senenfelder did not request that medical staff perform this test. After Ditton was cleared by medical staff for incarceration, he was transported to the detention center and cited for DUI, third offense. Ditton's driver's license was seized pursuant to § 61-8-402, MCA, based on his refusal to submit to a blood or breath test.

¶8 On August 6, 2010, Ditton filed in the District Court a petition to reinstate his driver's license under § 61-8-403(1), MCA, and a motion to stay the suspension of his driver's license pending a hearing under § 61-8-403(3), MCA. Ditton represented himself throughout these proceedings, including his present appeal to this Court. The District Court granted the requested stay, ordered the return of Ditton's license, and scheduled a hearing for November 4, 2010.

¶9 On October 4, 2010, Ditton filed a request that the Clerk of the District Court enter default against the State pursuant to Rule 55(a) of the Montana Rules of Civil Procedure.

4

Ditton also filed a request that the District Court enter default judgment against the State under Rule 55(b). Ditton premised these requests on the fact that the State had not filed an answer or response to his petition within 20 days after service of the petition. Ditton asserted that such a response was mandated under Rule 12(a) of the 2009 Montana Rules of Civil Procedure. As support for this proposition, Ditton cited our statement in *Patterson v. State*, 2002 MT 97, ¶ 12, 309 Mont. 381, 46 P.3d 642, that "a hearing held pursuant to § 61-8-403, MCA, is a civil proceeding, and, therefore, must be conducted in accordance with the Montana Rules of Civil Procedure."

¶10 The District Court denied Ditton's requests. The court concluded that § 61-8-403, MCA, sets forth the procedure to be followed in a license reinstatement proceeding and that this statute does not require the State to appear and defend within 20 days after service of the petition. The court rejected Ditton's reliance on *Patterson*, observing that our opinion there did not hold that the State is required to file an answer or responsive pleading to a petition for reinstatement of a driver's license.

¶11 The hearing on Ditton's petition was continued several times pursuant to requests by both the State and Ditton. It was finally scheduled for March 29, 2012. Meanwhile, on June 24, 2011, a jury in Bozeman Municipal Court found Ditton not guilty of the underlying DUI charge. Based on this acquittal and "principles of res judicata and/or collateral estoppel," Ditton filed a motion on March 16, 2012, asking the District Court to enter judgment against the State and to permanently reinstate his license.

¶12 The District Court granted Ditton's motion on March 16 (the day he had filed it), entered judgment in his favor, and vacated the March 29 hearing, all without obtaining

any response from the State. On March 21, the State moved to vacate the District Court's March 16 order, arguing that the State had not been given an opportunity to respond to Ditton's motion and that neither res judicata nor collateral estoppel applied. The District Court agreed that its entry of judgment had been premature. Thus, on April 2, the court vacated its March 16 order, set a hearing on Ditton's petition, and directed that his license "is not permanently reinstated, but is subject to suspension dependent upon the outcome of the hearing on the petition."

¶13 The hearing on Ditton's petition for reinstatement of his driver's license was held December 10, 2012. The District Court heard testimony from Officer Swanson, Officer Senenfelder, and Ditton. The court issued its Findings of Fact, Conclusions of Law, and Order on May 14, 2013. The court denied Ditton's petition. Ditton now appeals.

## STANDARDS OF REVIEW

¶14 We review a district court's ruling on a petition for reinstatement of a driver's license to determine whether the court's findings of fact are clearly erroneous and its conclusions of law correct. *Muri v. State*, 2004 MT 192, ¶ 5, 322 Mont. 219, 95 P.3d 149. The suspension of a driver's license is presumed to be correct, and the petitioner bears the burden of proving that the State's action was improper. *Muri*, ¶ 5; *accord Kleinsasser v. State*, 2002 MT 36, ¶ 10, 308 Mont. 325, 42 P.3d 801.

¶15 This Court exercises plenary review over questions of constitutional law. *State v. Hauer*, 2012 MT 120, ¶ 23, 365 Mont. 184, 279 P.3d 149. We review de novo a district court's construction of a statute to determine whether the district court's construction of the statute is correct. *State v. Eighteenth Jud. Dist. Ct.*, 2010 MT 263, ¶ 31, 358 Mont.

6

325, 246 P.3d 415. Where a trial court has granted a motion to set aside a default judgment and opened the action for a decision on the merits, the court's ruling will be reversed only on a showing of manifest abuse of discretion. *Benintendi v. Hein*, 2011 MT 298, ¶ 17, 363 Mont. 32, 265 P.3d 1239; *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 17, 338 Mont. 423, 166 P.3d 451. A manifest abuse of discretion is one that is obvious, evident, and unmistakable. *Benintendi*, ¶ 17.

## DISCUSSION

¶16 ***Issue 1. Did the District Court err in denying Ditton's request for the entry of default judgment against the State?***

¶17 A person whose driver's license has been seized and suspended pursuant to § 61-8-402(4), MCA, may file a petition in the district court challenging the suspension. Section 61-8-403(1), MCA. Upon the filing of a petition for reinstatement, the district court must follow the procedures outlined in § 61-8-403, MCA, which are as follows:

> (2) The court has jurisdiction and shall set the matter for hearing. The court shall give at least 10 days' written notice of the hearing to the county attorney of the county where the arrest was made and to the city attorney if the incident leading to the suspension or revocation resulted in a charge filed in a city or municipal court. The county attorney or city attorney may represent the state. If the county attorney and the city attorney cannot agree on who will represent the state, the county attorney shall represent the state.
> (3) Upon request of the petitioner, the court may order the department to return the seized license or issue a stay of the suspension or revocation action pending the hearing.
> (4)(a) The court shall take testimony and examine the facts of the case, except that the issues are limited to [those specified in subsections (i), (ii), (iii), and (iv)] . . . .
> (b) Based on the issues in subsection (4)(a) and no others, the court shall determine whether the petitioner is entitled to a license or whether the petitioner's license is subject to suspension or revocation.

7

Section 61-8-403(2)-(4), MCA. As we have stated on several occasions, § 61-8-403, MCA, "controls the appeal from the suspension of a license to the district court and in part limits the issues to be considered by the court." *In re Orman*, 224 Mont. 332, 334, 731 P.2d 893, 894 (1986); *accord Blake v. State*, 226 Mont. 193, 198, 735 P.2d 262, 264 (1987); *Kleinsasser*, ¶ 10 (under § 61-8-403(4), MCA, "a district court may consider only a limited number of issues in a driver's license reinstatement proceeding").

¶18 In the construction of a statute, the function of the court is simply to ascertain and declare what in terms or in substance is contained in the statute and not to insert what has been omitted. *In re Estate of Baier*, 173 Mont. 396, 401, 567 P.2d 943, 946 (1977); § 1-2-101, MCA. When the language of a statute is plain, unambiguous, direct, and certain, the statute speaks for itself and no further interpretation is required. *In re Maynard*, 2006 MT 162, ¶ 5, 332 Mont. 485, 139 P.3d 803. Consequently, for example, § 61-8-403, MCA, "does not grant authority to the trial judge to consider the issue of hardship as a mitigating factor and does not give the judge the authority to grant a restricted or probationary driver's license." *Blake*, 226 Mont. at 198-99, 735 P.2d at 265. The statute requires the court to determine whether the petitioner is entitled to a license or whether the petitioner's license is subject to suspension or revocation "[b]ased on the issues in subsection (4)(a) and no others." Section 61-8-403(4)(b), MCA. "This Court is not at liberty to make additions to a statute, for to do so would interfere with the domain of the legislature." *Blake*, 226 Mont. at 198, 735 P.2d at 265.

¶19 The procedural requirements of § 61-8-403, MCA, are clear and unambiguous. The court "shall set the matter for hearing" and "shall give at least 10 days' written notice

8

of the hearing to the county attorney of the county where the arrest was made and to the city attorney if the incident leading to the suspension or revocation resulted in a charge filed in a city or municipal court." Section 61-8-403(2), MCA. The court "shall take testimony and examine the facts of the case" and "shall determine whether the petitioner is entitled to a license or whether the petitioner's license is subject to suspension or revocation." Section 61-8-403(4)(a), (b), MCA. Absent from these provisions is any requirement that the State appear and defend prior to the hearing or that the State file an answer to the petition.

¶20 Ditton nevertheless maintains that Rule 12(a) of the 2009 Montana Rules of Civil Procedure required the State to file an answer to his petition for the reinstatement of his driver's license within 20 days after service of the petition. Ditton argues that the State's failure to file an answer entitles him to a default judgment under Rule 55(b).

¶21 It is well established that a petition to reinstate a driver's license under § 61-8-403, MCA, is a civil action. *Goldsmith v. Dept. of Just.*, 2007 MT 221, ¶ 4, 339 Mont. 65, 168 P.3d 1041; *Widdicombe v. State ex rel. Lafond*, 2004 MT 49, ¶ 10, 320 Mont. 133, 85 P.3d 1271; *Hunter v. State*, 264 Mont. 84, 87, 869 P.2d 787, 789 (1994); *Lancaster v. Dept. of Just.*, 218 Mont. 97, 100, 706 P.2d 126, 128 (1985). In *Patterson v. State*, 2002 MT 97, ¶ 12, 309 Mont. 381, 46 P.3d 642, we reiterated that "a hearing held pursuant to § 61-8-403, MCA, is a civil proceeding." We then stated that such hearing, "therefore, must be conducted in accordance with the Montana Rules of Civil Procedure." *Patterson*, ¶ 12. Our decision in *Patterson*, however, concerned a discovery issue and the application of discovery rules (namely, M. R. Civ. P. 26 and 34) to a reinstatement

9

proceeding. In particular, the issue was whether a 911 report was relevant, discoverable information and whether the district court abused its discretion in sanctioning the State by entering a default judgment in favor of Patterson due to the State's failure to produce the report. *See Patterson*, ¶¶ 10-23. We determined that "[c]ommon sense and fundamental fairness suggest that no party should be forced to proceed under such a 'cloud of uncertainty,'" and that "the State's disregard for the discovery process and procedures was, in itself, prejudicial to Patterson." *Patterson*, ¶ 21. Our decision, therefore, does not stand for the proposition asserted by Ditton here, namely, that the State was required to answer to his petition within 20 days of service.

¶22 It is a well-settled rule of statutory construction that the specific prevails over the general. *State v. Feight*, 2001 MT 205, ¶ 21, 306 Mont. 312, 33 P.3d 623. When two provisions deal with a subject, one in general and comprehensive terms and the other in minute and more definite terms, the more definite provision will prevail to the extent of any opposition between them. *Feight*, ¶ 21. Here, § 61-8-403, MCA, sets out specific procedures governing the filing of the petition, the setting of the hearing, notice to the county attorney and the city attorney, and the issues to be addressed at the hearing. The statute plainly contemplates notice to the State and an opportunity for the State to defend against the petition at the hearing. But there is no requirement that the State file a responsive pleading within 20 days after being served with the petition or that the State appear and defend prior to the hearing. Given the specific procedural framework set out by the Legislature in § 61-8-403, MCA, we reject Ditton's efforts to inject the general responsive pleading requirements of M. R. App. P. 12 into reinstatement proceedings.

¶23 For the foregoing reasons, we hold that the District Court correctly interpreted § 61-8-403, MCA. Ditton was not entitled to a default judgment based on the State's failure to file an answer, and the District Court thus did not err in denying his motion.[1]

¶24 ***Issue 2. Did the District Court abuse its discretion when it vacated its order granting judgment in favor of Ditton following his acquittal of the underlying offense?***

¶25 As explained, Ditton filed a motion on March 16, 2012, asking the District Court to enter judgment against the State and to permanently reinstate his license. This motion was based on his acquittal of the underlying DUI and "principles of res judicata and/or collateral estoppel." The District Court granted the motion that same day, without any response from the State. On March 21, the State moved to vacate the March 16 order, and the District Court granted that request on April 2. The court noted that the March 16 order had been "premature," that the State had not been given an opportunity to respond, and that an acquittal in Municipal Court did not establish res judicata or collateral estoppel in Ditton's reinstatement proceeding. Ditton argues that "law of the case" controls and that the District Court abused its discretion in vacating its March 16 order.

¶26 The determination in a criminal proceeding that the defendant is not guilty of DUI "is not a factor to be considered" in a license reinstatement proceeding. *Thompson v. Dept. of Just.*, 264 Mont. 372, 376, 871 P.2d 1333, 1335 (1994). A hearing held under § 61-8-403, MCA, "is a civil proceeding, separate and distinct from a criminal trial on the

---

[1] The State argues in the alternative that, even if Rule 12 applied, Ditton failed to comply with it because there is no evidence that he actually served a summons on the State along with his petition. Additionally, the State argues that it would have had 40 days, rather than 20, to file its answer. We need not address this argument, however, having determined that the State was not required under § 61-8-403, MCA, to file an answer.

11

charge of operating a motor vehicle while under the influence of alcohol." *Gebhardt v. State*, 238 Mont. 90, 95, 775 P.2d 1261, 1265 (1989). During the criminal proceeding on the DUI charge, the judge or jury determines whether the State has proved, beyond a reasonable doubt, that the defendant was driving or in actual physical control of a vehicle upon the ways of this State open to the public while under the influence of alcohol or drugs. *See* § 61-8-401(1), MCA. During the license reinstatement proceeding, in contrast, the issues are limited to: (1) whether a peace officer had reasonable grounds to believe that the person was driving or in actual physical control of a vehicle upon ways of this State open to the public while under the influence of alcohol or drugs; (2) whether the person was placed under arrest for a violation of § 61-8-401, MCA; and (3) whether the person refused to submit to one or more tests designated by the officer. *Bush v. Dept. of Just.*, 1998 MT 270, ¶ 8, 291 Mont. 359, 968 P.2d 716.

¶27 Thus, it can be seen that collateral estoppel, or issue preclusion, does not apply. Issue preclusion bars the reopening of an issue that has been litigated and determined in a prior suit. *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 18, 366 Mont. 78, 285 P.3d 494. In order for issue preclusion to apply, the issue decided in the prior adjudication must be "identical" to the issue raised in the subsequent action. *Brilz*, ¶ 19. The issue of whether the State proved beyond a reasonable doubt that Ditton committed the offense of DUI is not identical to the issues of whether Officer Senenfelder had reasonable grounds to believe that Ditton had committed DUI, whether Ditton was placed under arrest for DUI, and whether Ditton refused to submit to a blood or breath test. For the same reason, the law-of-the-case doctrine does not apply. Under that doctrine, a legal decision made at

one stage of litigation, and not appealed when the opportunity to do so exists, becomes the law of the case for the future course of that litigation. *McCormick v. Brevig*, 2007 MT 195, ¶ 38, 338 Mont. 370, 169 P.3d 352. Ditton's reinstatement proceeding was not a continuation of his criminal proceeding; as stated, the two were "separate and distinct" from each other. *Gebhardt*, 238 Mont. at 95, 775 P.2d at 1265. Finally, res judicata, or claim preclusion, does not apply because that doctrine bars the litigation of a claim that the party has already had an opportunity to litigate. *Brilz*, ¶ 21. Here, the litigation of Ditton's entitlement to have his license reinstated is, by statute, confined to a civil proceeding separate and distinct from the criminal proceeding.

¶28 For these reasons, we are not persuaded by Ditton's contentions that his driver's license should have been permanently reinstated based on his acquittal of the underlying DUI and principles of claim preclusion, issue preclusion, and law of the case. The District Court correctly determined that Ditton needed to demonstrate his entitlement to the return of his license under the criteria in § 61-8-403(4)(a), MCA. Furthermore, as to the court's decision to vacate the judgment previously entered in Ditton's favor, the District Court explained that it had acted prematurely and without giving the State an opportunity to respond. In fact, the March 16 order granting the relief requested by Ditton was signed the same day that he filed his motion. It may be that the District Court had not been made aware of the State's position or that it had overlooked the State's intention to challenge the reinstatement of Ditton's license. In any event, the District Court recognized that it had acted prematurely, and it corrected the mistake expeditiously without any prejudice to Ditton's ability to pursue his petition. It is the policy of the law

13

that every litigated case should be tried on the merits and, thus, judgments by default (as essentially occurred here) are not favored. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 17, 338 Mont. 423, 166 P.3d 451. We hold that the District Court did not manifestly abuse its discretion in setting aside the March 16, 2012 judgment.

¶29 ***Issue 3. Did the District Court err in denying Ditton's petition for reinstatement of his driver's license?***

¶30 When reviewing the suspension of a driver's license under Montana's implied consent law, the district court is limited to the issues set forth in § 61-8-403(4)(a), MCA, as described in *Bush*, ¶ 8. The first issue is whether a peace officer had reasonable grounds to believe that the person was driving or in actual physical control of a vehicle upon ways of this State open to the public while under the influence of alcohol or drugs. The "reasonable grounds" requirement in § 61-8-403(4)(a), MCA, is the equivalent of a "particularized suspicion" to make an investigative stop as set forth in § 46-5-401, MCA. *Brown v. State*, 2009 MT 64, ¶ 11, 349 Mont. 408, 203 P.3d 842. Whether particularized suspicion exists is a question of fact determined by examining the totality of the circumstances confronting the officer at the time. *Brown*, ¶ 20; *State v. Wagner*, 2013 MT 159, ¶ 10, 370 Mont. 381, 303 P.3d 285; *Anderson v. Dept. of Just.*, 275 Mont. 259, 263, 912 P.2d 212, 214 (1996).

¶31 Ditton alleges that Officer Senenfelder's Affidavit of Probable Cause filed in Ditton's Municipal Court criminal case contained false statements which were not considered by the District Court in his license reinstatement proceeding. Ditton also

maintains that there were no circumstances connecting Ditton to driving or being in actual physical control of the truck.

¶32 The District Court issued detailed findings of fact in its order denying Ditton's petition. Regardless of the allegedly false statements in Officer Senenfelder's Affidavit of Probable Cause, there was sufficient evidence for the District Court to determine that the officer possessed reasonable grounds to believe that Ditton had been driving under the influence of alcohol. Upon arriving at the scene, Officer Swanson observed Ditton approaching from the rear of the truck with his hands over his head in a surrender position and stating, "I'm the one you're looking for. It's me." This information, which was relayed to Officer Senenfelder, established reasonable grounds to believe that Ditton was the person who had been operating the vehicle which struck the Bozeman Printing Company building. Moreover, Ditton failed every field sobriety test that was administered, had the odor of an alcoholic beverage emanating from his person, spoke with slurred speech, had bloodshot and glassy eyes, and was unsteady on his feet. The totality of the circumstances establishes reasonable grounds to believe that Ditton had been driving while under the influence.

¶33 Upon review of the evidence presented to the District Court, we are persuaded that the court correctly applied the law and that its factual findings were not clearly erroneous. It also bears mentioning that because an assessment of testimony is best made upon observation of the witness's demeanor and consideration of other intangibles that are only evident during live testimony, *Ford v. Sentry Cas. Co.*, 2012 MT 156, ¶ 31, 365 Mont. 405, 282 P.3d 687, the fact-finder is uniquely in the best position to judge the credibility

15

of witnesses, *State v. Worrall*, 1999 MT 55, ¶ 50, 293 Mont. 439, 976 P.2d 968. We accordingly defer to the trial court regarding the credibility of witnesses and the weight to be accorded their testimony. *State v. Lally*, 2008 MT 452, ¶ 24, 348 Mont. 59, 199 P.3d 818. Here, the District Court was in the best position to assess the credibility of Officer Senenfelder's testimony and the allegedly false statements in his Affidavit of Probable Cause. The District Court apparently did not accept Ditton's contentions regarding Officer Senenfelder's credibility and, instead, found that there were reasonable grounds to support the officer's belief that Ditton had been driving his motor vehicle while under the influence of alcohol.

¶34    Ditton has not set forth any challenge to the remaining factors in § 61-8-403(4)(a), MCA—namely, whether he was placed under arrest for a violation of § 61-8-401, MCA, and whether he refused to submit to a blood or breath test. Accordingly, we decline to address those factors. We hold that the District Court did not err in denying Ditton's petition for reinstatement of his driver's license.

¶35    *Issue 4.  Were Ditton's constitutional rights to due process and privacy violated?*

¶36    Ditton asserts that he was denied his constitutional rights to due process and privacy under the United States and the Montana Constitutions. His arguments are not precisely clear, but it appears Ditton is claiming that his rights to privacy and due process were violated when hospital staff drew blood for the purpose of conducting a medical examination. Additionally, Ditton claims there was prosecutorial misconduct when the prosecutor failed to disclose allegedly false statements by Officer Senenfelder in his Affidavit of Probable Cause filed in the underlying criminal proceeding. Lastly, Ditton

16

claims that imposing a suspension of his driver's license 30 months after the initial suspension, and after his acquittal of DUI, is a manifest injustice.

¶37 We are not persuaded by Ditton's arguments. First, the District Court correctly determined that anything which occurred following Ditton's refusal to submit to a blood or breath test was irrelevant to the determination of whether his driver's license should be suspended, revoked, or reinstated. Once the court found that Ditton had refused Officer Senenfelder's request for a blood or breath test, the inquiry under § 61-8-403(4)(a), MCA, was over. *Bush*, ¶ 8. Ditton's argument perhaps relates to his underlying criminal proceeding and would have been appropriately addressed in that context—for example, pursuant to a motion to suppress. Alleged constitutional violations stemming from the taking of Ditton's blood are not, however, relevant to these proceedings.

¶38 Second, Ditton claims Officer Senenfelder perjured himself during his testimony in Ditton's criminal proceeding. He maintains that the prosecutor knew of this alleged perjury and that she did not disclose that fact to the District Court or to Ditton. It is hard to conceive, however, how Ditton could have been unaware about the alleged perjury of a witness who testified against him in his criminal case. Moreover, we have already discussed the District Court's assessment of the credibility of witnesses appearing in the reinstatement proceeding. As stated, the District Court was in the best position to judge Officer Senenfelder's credibility.

¶39 Finally, regarding Ditton's argument of "manifest injustice" in the delay between his initial suspension and the District Court's order reinstating the suspension, we note that some of the continuances delaying the reinstatement hearing were at Ditton's request

and that Ditton did not object to the continuances requested by the prosecution. Furthermore, Ditton has always been subject to the possibility of a suspension due to his refusal to submit to testing under § 61-8-402, MCA, and the stay of that suspension from August 6, 2010, to May 14, 2013, was at Ditton's request. Notably, the District Court has stayed the suspension pending the outcome of this appeal as well—again, at Ditton's request. Given these circumstances, we are not convinced that "manifest injustice" has or will occur or that Ditton was prejudiced by the delay in his reinstatement proceeding.

¶40 The District Court's order denying Ditton's petition for reinstatement of his driver's license is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT