FILED

06/14/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0666

DA 15-0666

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 144N

EKLYN CATALINO,

      Petitioner and Appellant,

v.

MATTHEW DAVID FREDERICKSEN,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                   In and For the County of Lake, Cause No. DR 14-74
                   Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           P. Mars Scott, P. Mars Scott Law Offices, Missoula, Montana

      For Appellee:

           Joan E. Cook, Law Office of Joan E. Cook, Missoula, Montana

Submitted on Briefs:  May 25, 2016

Decided:  June 14, 2016

Filed:

                                       Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Eklyn Catalino (Mother) appeals the findings of fact, conclusions of law, and final order entered by the Twentieth Judicial District Court, Lake County, adopting Matthew David Fredericksen's (Father) proposed parenting plan and holding Mother in contempt for failing to pay portions of child support and child medical and travel expenses. We affirm in part and remand for further findings.

¶3 Mother and Father were married in Idaho in 2006 and divorced in Idaho in 2009. They are the parents of one minor child, K.N.F., age 9. Pursuant to the terms of the Idaho divorce decree—which was modified and amended in 2010 and again in 2013—the parties were granted joint legal and physical custody of K.N.F. with Mother having primary physical custody and Father having reasonable visitation. The Idaho court indicated that it would retain jurisdiction over the parties and the action even if neither party continued to reside in Idaho. Mother moved with her new husband to Montana in December 2012, where she currently resides. Father is on active duty with the United States Air Force and currently is stationed in Florida.

¶4 Prior to initiating filings in Montana, Mother filed a motion in Idaho requesting that the Idaho court determine if it had exclusive, continuing jurisdiction over the parties

in the matter. On June 18, 2014, before the Idaho court ruled on her motion, Mother filed a motion with the District Court to amend the parenting plan and for the Montana court to assume jurisdiction. Father objected to the District Court's jurisdiction over Mother's motion. Shortly thereafter, the Idaho court issued a ruling that it no longer had jurisdiction over the action.

¶5 At the time Mother filed her motions, K.N.F. was visiting Father in Florida and was scheduled to return to Mother in mid-August 2014. On August 14, 2014, before K.N.F. returned, Father filed an ex parte emergency motion for amendment of the parenting plan and an emergency motion to assume immediate jurisdiction. Father based the motions on his belief that returning K.N.F. to Mother would place K.N.F. at significant risk of harm because of Mother's current husband's (Louis) alleged history of sexually abusing children and evidence indicating that K.N.F. had suffered abuse and neglect. The District Court issued an order staying Mother's motion and exercising temporary emergency jurisdiction pursuant to § 40-7-204, MCA. Concerned about Montana's assumption of jurisdiction as the most appropriate forum for resolution of the action, the court stayed all further proceedings in Montana until August 27, 2014, when it became clear that the Idaho court was declining to exercise further jurisdiction. That same day, the District Court assumed jurisdiction over the action.

¶6 The court set a hearing for September 18, 2014, on the Temporary Emergency Jurisdiction Order under the Uniform Child Custody Jurisdiction and Enforcement Act, §§ 40-7-101 to -317, MCA, to resolve the emergency, protect the safety of the child, and determine the duration of the temporary order. In the meantime, Mother filed a motion

3

claiming that the hearing date was not within the 21-day period allowed under § 40-4-220, MCA, and thus violated her constitutional right to due process. She claimed that the 21-day period began on August 15, 2014—when the court assumed temporary jurisdiction—rather than on August 27, 2014—when the court assumed permanent jurisdiction. Subject to that objection, Mother agreed to change the hearing date to September 23, 2014.

¶7 After the hearing, based on the parties' stipulation, the District Court entered an order requiring the parties to provide the court with additional evidence to reach a conclusion regarding the temporary parenting of K.N.F. The court set a hearing for January 21, 2015. Louis's former wife, her daughter, and her niece testified on Father's behalf. The girls both testified to instances where they had been sexually assaulted by Louis. Louis's former wife testified about proceedings in a Texas district court involving sexual abuse allegations against Louis made by her daughter. Mother did not call any witnesses. The court found that the testimony presented by Father's three witnesses raised concerns for K.N.F.'s safety and constituted sufficient evidence to grant emergency protection. The court granted Father's motion for an emergency interim parenting plan and ordered that K.N.F. remain in Florida with Father, pending the adoption of a permanent parenting plan.

¶8 In February and March 2015, both parties submitted proposed parenting plans. On March 10, 2015, Mother filed a petition for writ of supervisory control with this Court. We denied Mother's petition on April 21, 2015, determining that Mother's allegations did

4

not justify supervisory control under M. R. App. P. 14. *Catalino v. 20th Judicial Dist. Ct.*, No. OP 15-0150, Or. (Mont. April 21, 2015).

¶9 On April 28, 2015, Father filed a motion for contempt based on Mother's failure to comply with earlier court orders requiring her to reimburse Father for K.N.F.'s expenses. Mother denied the contempt allegations and requested that the court waive the hearing on the contempt motion. Father replied and moved to set a combined final hearing and show cause hearing. Mother filed a "note of issue" on July 8, 2015, stating that the record was complete and no further evidence was necessary for the court to make its final ruling. She requested that the court enter judgment on the file, without an additional hearing. Father waived the hearing also. On August 31, 2015, Father filed his proposed final parenting plan. On October 5, 2015, the District Court entered findings of fact, conclusions of law, and an order adopting Father's final parenting plan and holding Mother in contempt for failing to pay portions of child support and portions of K.N.F's medical and travel expenses. Mother appeals.

¶10 In considering the amendment of a parenting plan, we review a district court's findings of fact to determine whether they are clearly erroneous. *In re Marriage of Whyte*, 2012 MT 45, ¶ 14, 364 Mont. 219, 272 P.3d 102. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *In re Marriage of Crowley*, 2014 MT 42, ¶ 24, 374 Mont. 48, 318 P.3d 1031. "A court's findings must be complete enough that we need not 'succumb to speculation when assessing the conscientiousness or reasonableness of the

district court's judgment.'" *Crowley*, ¶ 24 (quoting *In re Marriage of Bartsch*, 2007 MT 136, ¶ 33, 337 Mont. 386, 162 P.3d 72). We review a district court's conclusions of law to determine whether the district court's interpretation and application of the law are correct. *In re Marriage of Weber*, 2004 MT 206, ¶ 14, 322 Mont. 324, 95 P.3d 694.

¶11 On appeal, Mother argues that there were numerous procedural errors in the District Court proceedings and that the court erred by holding her in contempt for failure to make payments "for which she was not legally obligated." We find most of Mother's arguments unpersuasive and conclude that she was not denied due process by virtue of the claimed statutory procedural errors. We also uphold the contempt order requiring reimbursement because the District Court did not err in determining that the expenses were for the child's medical, dental, and travel costs for which Mother was obligated.

¶12 We turn our attention to the provisions of the District Court's final amended parenting plan. Mother argues that her due process rights were violated when the District Court adopted Father's August 31 parenting plan because it was filed after she waived the final hearing and contained "restrictive provisions" of which she had no notice. The court adopted a final plan that provided Mother with supervised visitation with K.N.F. at Father's residence for "[u]p to four (4) hours per day for three (3) days during the child's summer break" and for "[u]p to three (3) hours per day for three (3) days during the child's winter break/Christmas holiday period." While Mother acknowledges that Father's February parenting plan provided her some information about Father's intentions, she claims that it was "ambiguous at best" and failed to give her "notice that he sought, essentially, sole custody of K.N.F." Mother argues also that the "District

6

Court's findings do not support restricting [her] parenting time to only 21 hours of supervised visitation a year" because the court "made no findings regarding [her] relationship with K.N.F., their attachment to one another or [Mother's] parenting abilities."

¶13 A court may amend a prior parenting plan if it finds, based on facts that have arisen since the prior plan, or that were unknown to the court when the prior plan was entered, "that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child." Section 40-4-219(1), MCA. In determining the best interest of the child, the court must consider all relevant parenting factors, including "the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest"; "the mental and physical health of all individuals involved"; and "physical abuse or threat of physical abuse by one parent against the other parent or the child." Section 40-4-212(c), (e), (f), MCA. The court may order supervised visitation by the noncustodial parent if "both parents or all contestants agree" or if the court finds that "the child's physical health would be endangered or the child's emotional development significantly impaired." Section 40-4-218(2), MCA. With respect to the credibility of witnesses and the weight accorded to their testimony, we defer to the trial court "because an assessment of testimony is best made upon observation of the witness's demeanor and consideration of other intangibles that are only evident during live testimony." *Ditton v. DOJ Motor Vehicle Div.*, 2014 MT 54, ¶ 33, 374 Mont. 122, 319 P.3d 1268. "Trial courts have broad discretion when considering the parenting of a child,

and we must presume that the court carefully considered the evidence and made the correct decision." *Crowley*, ¶ 44.

¶14     We conclude that the court's findings of fact with respect to granting Father full physical custody of K.N.F. are supported by substantial evidence and its conclusions of law on this matter are correct. The District Court made findings that it would not be in K.N.F.'s best interest to live with Mother. The court found the testimony of Louis's former wife, her daughter, and her niece to be "credible and persuasive," and that the evidence caused the court "concerns for the safety of [K.N.F.]." The court concluded that granting full physical custody to Father was in K.N.F's best interest because the testimony provided sufficient evidence to support Father's allegations that K.N.F. "would likely be subject to physical, mental, and/or sexual abuse if she were returned to the mother's residential care."

¶15     Father's February proposed parenting plan included a provision requiring Mother to have supervised visitation with K.N.F. for limited periods of time during the summer and Christmas holidays. We conclude that Mother's due process rights were not violated because she had notice of Father's intentions and an opportunity to present the issue to the District Court before she agreed to waive a final hearing. The court's findings, however, do not justify its decision to require that Mother's visitations with K.N.F. be supervised under the standards required by § 40-4-218(2), MCA. The District Court made no findings that K.N.F.'s physical health would be endangered or that her emotional development would be significantly impaired if Mother's visits were not supervised. Section 40-4-218(2), MCA. Moreover, there is no discussion of evidence in

8

the record that would support an implied finding that would meet the statutory standard. While the evidence and the court's findings support its decision to restrict Mother's parenting in order to prevent Louis from having contact with K.N.F. "at any time or place," the court did not find Mother to be unfit or to present any danger to the child so long as Louis was not present, and it gave no explanation for the severe restriction on Mother's individual parenting time with her daughter. In the absence of findings to support its restrictive supervised visitation of only 21 hours per year, we must "succumb to speculation when assessing the conscientiousness or reasonableness of the district court's judgment." *Crowley*, ¶ 24. Consequently, we vacate the parenting plan and remand to the District Court for modification of or entry of additional findings regarding Mother's parenting time and whether supervised visitation is appropriate under the provisions of § 40-4-218(2), MCA.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, this case presents a question controlled by settled law or by the clear application of applicable standards of review. We affirm the District Court's contempt order. We vacate the District Court's Fourth Amended Parenting Plan and remand for modification of or additional findings of fact on Mother's parenting time and for entry of conclusions of law and an amended order based on those findings.

/S/ BETH BAKER

9

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE