DA 25-0395

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 81

ERIK JOSEPH KALAFAT,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDV-24-087
Honorable Elizabeth . Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nathan J. Hoines, James R. Olsen, Denise LaFontaine-Aron, Hoines
Law Office, P.C., Great Falls, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

          Joshua A. Racki, Cascade County Attorney, John C. Brothers, Deputy
County Attorney, Great Falls, Montana

                         Submitted on Briefs:  March 11, 2026

                                  Decided:  April 21, 2026

Filed:

                      _____
                               Clerk

FILED

04/21/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0395

Justice Jim Rice delivered the Opinion of the Court.

¶1    Erik Joseph Kalafat appeals from the May 30, 2025 Order of the Eighth Judicial District Court, Cascade County, dismissing Kalafat's Petition for Judicial Review and Revocation of the suspension of his driver's license under Montana's implied-consent law. The single issue on appeal is whether the District Court erred by granting the State's motion to dismiss Kalafat's petition as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    On February 20, 2024, Cascade County Deputy Seder stopped Kalafat for allegedly crossing the centerline, overcorrecting, and crossing the fog line while driving in Cascade County. The traffic stop escalated into a DUI investigation based on Kalafat's alleged slurred speech, the odor of alcohol, and glossy eyes. Deputy Seder requested that Kalafat submit to a preliminary breath test and, ultimately, a blood test. Kalafat refused both tests. Pursuant to Montana's implied-consent statute, § 61-8-1016, MCA, Deputy Seder seized Kalafat's driver's license and issued a notice of automatic six-month suspension of his driving privileges.

¶3    The following day, February 21, 2024, Kalafat filed a Petition for Judicial Review and Revocation of his driver's license suspension. In his petition, Kalafat alleged that the officer lacked particularized suspicion both to initiate the traffic stop and to request a preliminary breath test or a blood test. He asked the District Court to review the stop, overturn the suspension, and order the return of his license. The District Court promptly set an evidentiary hearing for April 2, 2024, and ordered the parties to file briefs identifying

2

the facts and law at issue no later than March 25, 2024. The court's order warned that "[i]f trial briefs are not timely filed, the hearing shall be automatically vacated."

¶4 On March 26, 2024, Kalafat moved to continue the April 2 hearing because he had been summoned for jury duty on that date. The District Court granted the continuance and rescheduled the evidentiary hearing for June 25, 2024. On June 18, 2024, per the District Court's previous order, the District Court vacated the hearing and stated that it would remain vacated "until such time as both parties have filed briefs and move to reset the hearing." Kalafat filed his brief on the same day, June 18, arguing that Deputy Seder lacked particularized suspicion and requesting reinstatement of his driving privileges. The record is unclear whether Kalafat's brief was filed before or after the District Court vacated the hearing. It is clear the State did not thereafter file a brief responding to the merits of Kalafat's petition, and thus, pursuant to the District Court's order, there was not a reason for Kalafat to move to reset the hearing.

¶5 Meanwhile, Kalafat's six-month suspension ended by operation of law on August 21, 2024, and the State reinstated his driving privileges and returned his license. In April 2025, Kalafat moved to reset the evidentiary hearing and requested a deadline for the State to file its responsive brief. The District Court reset the hearing for June 17, 2025, and ordered the State's brief due May 5, 2025. On April 28, 2025, the State moved to dismiss Kalafat's petition and request for a hearing on the ground the matter was moot. The State argued the only relief authorized by § 61-8-1017(4), MCA, was return of the seized license, which had already occurred when Kalafat's license was reinstated, and thus

3

no live justiciable controversy remained. Kalafat opposed the motion, contending that the matter was not moot because: (1) a finding that the suspension was invalid could result in a refund of license reinstatement fees, avoidance of higher future reinstatement fees under § 61-8-1032, MCA, lower insurance premiums, and protection against future implied-consent consequences; (2) his constitutional rights under the Fourth Amendment were implicated; and (3) the Eighth Judicial District Court's scheduling practices had prejudiced him. Kalafat also noted that he had been acquitted by a jury on the underlying criminal DUI charges.

¶6 On May 30, 2025, the District Court granted the State's motion and dismissed the petition, concluding that "Kalafat's driver's license has been returned, and the return of that license is all the [District] Court could have ordered. The [District] Court has no power to offer any further relief. Accordingly, this issue is MOOT."

¶7 Kalafat appeals.

**STANDARD OF REVIEW**

¶8 This Court reviews questions of justiciability de novo. *Reichert v. State ex rel. McCulloch*, 2012 MT 111, ¶ 20, 365 Mont. 92, 278 P.3d 455. "Mootness, as an issue of justiciability, presents a question of law, which we review for correctness." *In re Big Foot Dumpsters & Containers, LLC*, 2022 MT 67, ¶ 7, 408 Mont. 187, 507 P.3d 169 (citation omitted).

4

**DISCUSSION**

¶9     *Whether the District Court erred by granting the State's motion to dismiss Kalafat's petition as moot.*

¶10     While we have decided license suspension cases on the merits, *see e.g. Indreland v. Mont. D.O.J., Motor Vehicle Div.*, 2019 MT 141, 396 Mont. 163, 451 P.3d 51, the justiciability question presented here is one of first impression, that being whether a petition for judicial review under § 61-8-1017, MCA, is mooted when the driver timely requests an evidentiary hearing challenging the existence of particularized suspicion, but the license suspension expires by operation of law and the license is reinstated before a court rules on the petition. License suspension by implied consent is a civil administrative proceeding separate and distinct from a criminal action on the charge of driving while intoxicated. *Ditton v. Dep't of Justice*, 2014 MT 54, ¶ 26, 374 Mont. 122, 319 P.3d 1268. We therefore apply civil mootness jurisprudence to the "unique facts, procedural history, and relief requested" of this case. *Progressive Direct Ins. Co. v. Stuivenga*, 2012 MT 75, ¶ 49, 364 Mont. 390, 276 P.3d 867.

¶11     Montana courts are limited to deciding justiciable controversies. *Progressive Direct Ins. Co.*, ¶ 16. A justiciable controversy is one that can be resolved by the courts. *In re Big Foot Dumpsters & Containers*, ¶ 9. Because a mooted case does not present a justiciable controversy, this Court lacks jurisdiction to decide it, "insofar as an actual case or controversy no longer exists." *Progressive Direct Ins. Co.*, ¶ 17. An issue becomes moot when it ceases to be "live" or, due to a change in circumstances or an intervening event, the court can no longer grant effective relief. *In re Big Foot Dumpsters &*

5

*Containers*, ¶ 10 (citing *Ramon v. Short*, 2020 MT 69, ¶ 20, 399 Mont. 254, 460 P.3d 867). The fundamental question in a mootness analysis is whether the court can still grant the appellant some form of effective relief. *In re Big Foot Dumpsters & Containers*, ¶ 10 (citing *Wilkie v. Hartford Underwriters Ins. Co.*, 2021 MT 221, ¶ 8, 405 Mont. 259, 494 P.3d 892). "[I]f restitution or some other form of relief would be possible upon a reversal, then the appeal is not moot." *Progressive Direct Ins. Co.*, ¶ 49.

¶12  Under Montana's implied-consent law, a person operating a vehicle in this state is generally "considered to have given consent" to testing for alcohol or drugs. *See* § 61-8-1016, MCA. If a peace officer has particularized suspicion of DUI, the officer may request a test and must inform the driver that he may refuse testing, "a matter of grace bestowed by the Legislature," *State v. Turbiville*, 2003 MT 340, ¶ 16, 318 Mont. 451, 81 P.3d 475, and that refusal will result in an automatic suspension of the driver's license. *See* § 61-8-1016, MCA. Upon a driver's refusal, the officer must seize the license, § 61-8-1016(4)(c)(i), MCA, and the license is suspended for six months. Section 61-8-1032, MCA. A driver whose license has been suspended for refusal to submit to testing may petition the district court in the county where the arrest occurred for judicial review within thirty days of the suspension. *See* § 61-8-1017, MCA. Section 61-8-1017, MCA, limits the district court's inquiry to two issues: (1) whether the peace officer had a basis to request testing, and (2) whether the driver refused to submit to testing. *See also* § 61-8-1016(2)(d), MCA.

¶13 The State argued in its motion to dismiss that "[t]he only relief the [District] Court can provide . . . is 'to return the seized [driver's] license of the Petitioner,'" ostensibly quoting § 61-8-1017(4), MCA, but that particular language does not appear in the statute. Section 61-8-1017(4), MCA, directs a district court to "determine whether the petitioner is entitled to a license," but is otherwise silent on the precise form of relief a district court may grant. The District Court granted the State's motion to dismiss the proceeding as moot, repeating the language proffered by the State's motion that "return of that license is all the [District] Court could have ordered."

¶14 Kalafat argues a live controversy remains notwithstanding the reinstatement of his license, contending the District Court could still grant effective relief because a ruling in his favor could retroactively invalidate his suspension—not merely return his license. Such a ruling, he asserts, would entitle him to a refund or waiver of license reinstatement fees, removal of the suspension notation from his driving record, which could affect future insurance rates and subsequent implied-consent proceedings, and vindicate his Fourth Amendment claim that the officer lacked particularized suspicion to initiate the stop and request the breath and blood tests. Kalafat points out that he was acquitted by a jury on the underlying criminal DUI charges, implying that the officer lacked particularized suspicion for the stop or the escalation into a DUI investigation. Kalafat further asserts that the Eighth Judicial District Court has a "blanket policy" of denying temporary driving permits pending review, despite the authorization for such in § 61-8-1017(3), MCA, which,

combined with its routine vacation of hearings for missed briefing deadlines, unfairly contributed to the delay that led to the expiration of his suspension.

¶15 Some of the asserted impacts offered by Kalafat, such as the effect of his suspension on future implied-consent proceedings or DUI cases, may be speculative because they are predicated on future criminal conduct by Kalafat. We are also unpersuaded that the Eighth Judicial District Court's alleged "blanket policy" of denying temporary driving permits or its routine vacation of hearings for missed briefing deadlines provides a basis for granting relief or reversing the dismissal on mootness grounds. This claim is unsupported by the record, and district courts possess broad discretion to manage their own dockets and enforce procedural orders consistent with the Montana Rules of Civil Procedure. M. R. Civ. P. 83.

¶16 Yet, we agree with Kalafat, in material part. The impacts of his license suspension he has identified are real or likely consequences that are capable of being relieved. Although the record contains no evidentiary showing of the amount of reinstatement fees Kalafat paid, or the likely increase in his future insurance costs, these are rational, tangible collateral consequences that flow from the suspension. Procedurally, up until August 21, 2024, when Kalafat's license was reinstated at the end of the statutory 6-month suspension, Kalafat had followed the procedures provided by the Legislature to challenge the suspension of his license. While Kalafat did not submit a brief addressing particularized suspicion prior to the scheduled April 2, 2024 hearing, he instead timely moved to continue that hearing because he had been summoned for jury duty. He did submit briefing for the

8

rescheduled June 25 hearing that was timely, or at least filed on the same day the District Court continued the hearing; it was the State that failed to submit any briefing.

¶17 "In the construction of a statute, the function of the court is simply to ascertain and declare what in terms or in substance is contained in the statute." *Ditton*, ¶ 18 (citation omitted). Based on the plain language of the statutes, the Legislature has directed that "[a] hearing as provided for in 61-8-1017 must be available," limited to "determining whether a peace officer had particularized suspicion" the driver was driving under the influence and "whether the person refused to submit to the test." Section 61-8-1016(2)(d), MCA. The court "shall take testimony, examine the facts of the case, and determine whether the petitioner is entitled to a license or whether the petitioner's license is subject to suspension or revocation." Section 61-8-1017(4), MCA. Nothing in § 61-8-1017, MCA, suggests that a refusal suspension cannot be removed once a court determines it was invalid. Although license-suspension proceedings under Montana's implied-consent law are civil in nature, the underlying conduct the Legislature seeks to deter, driving under the influence, is criminal. *See* § 61-8-1002, MCA. The plain language thus supports the conclusion that a district court may remove an invalid refusal and related suspension notation from a petitioner's driving record when it finds that the officer had no basis "for requesting a test or tests as set forth in 61-8-1016 [MCA]," or that the driver did not actually refuse testing. Section 61-8-1017, MCA. To hold otherwise would effectively deny a driver any meaningful opportunity to challenge an unlawful suspension and would raise procedural due process concerns. *See Bell v. Burson*, 402 U.S. 535, 539, 91 S. Ct. 1586, 1589 (1971)

9

("Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.").

¶18 We conclude that the reinstatement of Kalafat's license by operation of law did not render moot his timely-filed petition for judicial review. He could yet obtain concrete relief, and he did not, by his actions, fail to pursue or otherwise waive his right to pursue relief. His statutory right to judicial review under § 61-8-1017, MCA, must therefore be given full effect.

¶19 We do not foreclose the possibility that, under different circumstances, a petition for judicial review of a license suspension may be moot, barred by estoppel, or otherwise ineligible for judicial review.

¶20 We reverse the District Court's order granting the State's motion to dismiss and remand for further proceedings consistent with this Opinion.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON