DA 06-0277

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 225

JOHN WILLIAM ANDERSON,

        Petitioner and Appellant,

   v.

STATE OF MONTANA,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Toole, Cause No. 05-DV-029
Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jeremy S. Yellin, Attorney at Law, Havre, Montana

      For Respondent:

          Honorable Mike McGrath, Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

          Merle Raph, County Attorney, Shelby, Montana

Submitted on Briefs:  April 4, 2007

Decided:  September 11, 2007

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Appellant John William Anderson (Anderson) was arrested for driving under the influence of alcohol (DUI).   Anderson was convicted of DUI in the Ninth Judicial District Court, Toole County, then filed a petition seeking reinstatement of his driver's license, pursuant to § 61-8-403(1), MCA.   Anderson asserted that his refusal to submit to a breathalyzer test could not be the basis for the State's seizure of his driver's license because the implied consent advisory was read to him incorrectly.   The District Court entered an order denying Anderson's petition.   We affirm.

¶2      Did the District Court err in denying Anderson's petition to reinstate his driver's license given that Anderson was read the consequences a nonresident motorist would face after refusing a breath test, rather than the consequences Anderson, a Montana resident, would face?

### FACTUAL AND PROCEDURAL BACKGROUND

¶3      On April 28, 2005, Anderson was arrested for DUI and transported to the Toole County Safety Facility for processing.   Toole County Deputy Sheriff Mark Pattison read Anderson an implied consent advisory before asking Anderson to submit to a breath test. Deputy Pattison instructed Anderson that, in accordance with Montana law, a person operating a motor vehicle in Montana impliedly consents to a breath or blood test for the presence of alcohol or drugs in the person's body.   Deputy Pattison also read to Anderson that a nonresident driver who refused to take the test would have his driving privileges suspended for a minimum of six months.   Anderson was further informed that he could

2

contest any action taken against his driver's license and could obtain an independent test of his breath or blood as well.

¶4 However, despite the fact that Anderson was a Montana resident, he was not read that portion of the implied consent advisory specifically directed to Montana residents. Identical to a nonresident's refusal, a Montana resident's refusal to submit to a blood alcohol test also results in a suspension of driving privileges for a minimum of six months. Anderson refused to submit to the breath test after being read the advisory, and his driver's license was seized.

¶5 On February 17, 2006, Anderson filed a brief in support of his petition to reinstate his driver's license, arguing that law enforcement's failure to advise him of the consequences he, as a Montana resident, would face for refusing a breath test rendered his subsequent refusal invalid. On March 9, 2006, the District Court issued its order denying Anderson's petition, concluding that Anderson presented no evidence that Deputy Pattison's reference to nonresident drivers confused Anderson regarding the consequences of his own refusal to take the breath test. Anderson appeals the District Court's denial of his petition.

**STANDARD OF REVIEW**

¶6 We review a district court's denial of a petition for reinstatement of a driver's license to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct. *Ellenburg v. Mont. Dept. of Justice*, 280 Mont. 268, 270, 929 P.2d 861, 863 (1996).

DISCUSSION

¶7     Did the District Court err in denying Anderson's petition to reinstate his driver's license given that Anderson was read the consequences a nonresident motorist would face after refusing a breath test, rather than the consequences Anderson, a Montana resident, would face?

¶8     Pursuant to § 61-8-403(4)(a), MCA, the District Court reviewed Anderson's petition for reinstatement of his driver's license to determine whether Anderson refused to submit to a breath test as required by § 61-8-402, MCA. Anderson argues his refusal to submit to the breath test was invalid because, although he was advised that a nonresident would have his or her driver's license suspended, he was unaware that his own license could also be suspended. In response, the State maintains that the informed consent advisory is meant to inform a person suspected of DUI of the potentially serious consequences of refusal, not necessarily of all the specific ramifications. Accordingly, the State contends that the advisory given to Anderson accomplished that objective without misleading him.

¶9     Under Montana law, a person who operates a motor vehicle on roads of this state is deemed to have consented to a blood or breath test to determine the presence of alcohol or drugs in his or her body. Section 61-8-402(1), MCA. If an arrested driver carries a Montana driver's license and refuses testing, the investigating officer must seize the person's driver's license and forward it to the Department of Justice, along with a report stating the basis for the testing request and the fact of refusal. Section 61-8-402(4), MCA. The Department is then authorized to suspend the license for six months if it is that driver's first refusal, or to revoke the license for one year if it is a second or

4

subsequent refusal. Section 61-8-402(4), MCA. Similarly, the Department is authorized to suspend or revoke nonresident driving privileges in Montana for a minimum of six months by seizing the driver's license and forwarding it to the licensing authority of the nonresident's home state, along with a report of the nonresident's refusal to submit to one or more blood alcohol tests. Section 61-8-402(7), MCA.

¶10 This Court has previously held that persons arrested for DUI need not be made aware of the specific ramifications of refusing to consent to a blood alcohol test. In *State v. Simmons*, 2000 MT 329, 303 Mont. 60, 15 P.3d 408, we stated:

> Montana's implied consent statutes do not specifically require an officer to provide information to an arrested motorist as to the ramifications of refusal to take the requested test. In fact, a driver is not entitled to be informed that he or she may refuse the test. The purpose of the Implied Consent Advisory is to inform an apparently intoxicated driver of the potentially serious consequences of refusing to submit to a blood alcohol test and of his due process protections such as rights to independent testing and post-testing hearings.

*Simmons*, ¶ 17 (citations omitted).

¶11 In the District Court, Anderson argued that Deputy Pattison's error in reading the advisory left him with the impression that refusing the test would not result in his Montana driver's license being seized or suspended. The District Court found that Anderson presented no evidence indicating that Deputy Pattison's reference to nonresident drivers confused Anderson, or led him to believe that his driver's license would not be seized should he do so.

¶12 Anderson now argues that "there is no requirement that he show confusion," but, rather, that the incorrect advisory language itself constituted error as a matter of law.

5

Anderson maintains that he was never informed of the "potentially serious consequences" of refusing the breath test because he was only told the consequences a nonresident driver would face upon refusing such a test.

¶13 "The purposes of Montana's implied consent advisory forms are to put an apparently intoxicated driver on notice of the potentially serious consequences of refusing a blood alcohol test, and to alert him to his due process protections germane to independent testing and post-testing hearings." *City of Missoula v. Fergunson*, 2001 MT 69, ¶ 11, 305 Mont. 36, ¶ 11, 22 P.3d 198, ¶ 11 (citing *Simmons*, ¶ 17). Anderson was put "on notice" that refusing to take a blood test has potentially serious consequences. After being advised that a "nonresident driver" would lose his driving privileges for six months if he refused testing, Anderson was notified of his due process rights to obtain independent blood testing. Deputy Pattison also advised Anderson that he could contest any action taken against his driver's license if he chose not to submit to the requested testing—an obvious indication that there could be consequences if he refused the breath test. Anderson was informed that he had a right to a post-test hearing in court. Anderson was not misled by the State and was sufficiently advised to be on notice of the potentially serious consequences of refusing the test. This situation is not dissimilar to the one we faced in *Simmons*, wherein we rejected a nonresident's argument that information read to him regarding the consequences to a resident driver had invalidated the advisory. *Simmons*, ¶ 18.

¶14 We agree with the District Court that the information provided to Anderson met the requirements of *Simmons*: Anderson was informed that a refusal to submit to a breath

6

test would have serious consequences, and he was informed of the due process protections available to him. The District Court's findings are not clearly erroneous and its conclusions of law are correct. We therefore affirm the District Court's denial of Anderson's petition for reinstatement of his driver's license.

¶15    Affirmed.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Chief Justice Karla M. Gray, dissenting.

¶16    I respectfully dissent from the Court's opinion. I have no quarrel with the Court's quotes from *Simmons* and *Fergunson*. It is my view, however, that neither case supports the Court's action here.

¶17    The present case involves a Montana driver arrested for DUI, advised of the ramifications to a nonresident driver upon refusal to submit to a breath test and advised he could obtain an independent test as well. Anderson also was advised that he could contest any action taken against his driver's license. Anderson refused the test, and later challenged the seizure of his driver's license via a petition to reinstate.

¶18    In *Simmons*, the arrestee was a nonresident driver who was advised his license would be seized and suspended for six months upon refusal to take the test. Stated

differently, he was given the so-called "Montana resident" form of the implied consent advisory. He submitted to the test and later—during the proceedings on his DUI charge—moved the district court to suppress the test results on the basis he was given erroneous and misleading information about the ramifications of taking or refusing the test. These facts bear no resemblance to those in the present case. We concluded in *Simmons* that the arrestee was provided with "sufficiently accurate information as to the ramifications of a refusal to submit to testing[,]" because the information he was given was technically correct.

¶19 The facts in *Fergunson* were much like those in *Simmons*: nonresident driver, given the advisory about the consequences of failing to take the test, submitted to the test and moved to suppress the test results during the DUI proceeding. The only significant factual difference between *Simmons* and *Fergunson* is that, in the latter case, the nonresident driver was given both the resident and nonresident advisories. *Fergunson,* ¶ 3. Again, very different facts from those presently before us. We concluded, relying heavily on *Simmons*, that the arrestee was "put . . . on notice of the potentially serious consequences of refusing a blood alcohol test." *Fergunson*, ¶ 11.

¶20 I realize, of course, that the Court relies on these cases for the law and not for the facts. In my opinion, the law does not support the Court either. It is true, as quoted from *Simmons*, that the implied consent statutes do not specifically require notice to an arrested motorist about the ramifications of refusal to take the requested test. It is equally true, however, that our long-standing jurisprudence, including *Simmons* and *Fergunson*, states that the purpose of the advisory is to inform "an apparently intoxicated driver of the

8

potentially serious consequences of refusing to submit to a blood alcohol test." *Simmons*, ¶ 17.

¶21 In the present case, Anderson was not informed that his Montana driver's license would be seized and suspended. Thus, he was not informed of the potentially serious consequences of refusing the test. Informing an apparently impaired driver that he could contest "any action taken" against his license if he refused the test is not at all—at least to me—equivalent to informing him of what kind of action would be taken upon refusal. The "potentially serious consequence[] of refusing the test" is the seizure and suspension of the driver's license. While the Court apparently thinks advice that Anderson could contest "any action" is "an obvious indication" that there could be consequences if he refused, I am not persuaded that a driver supposedly impaired by alcohol who is stopped after leaving a bar and traveling some distance in his vehicle without headlights at 1:55 a.m., would think the indication was so obvious. Nor am I convinced that advising there "could" be consequences—when the law requires seizure and suspension of the driver's license—is sufficient.

¶22 I dissent from the Court's opinion. I would reverse the District Court.

/S/ KARLA M. GRAY