JUSTICE McKINNON
delivered the Opinion of the Court.
¶1 Justin Williams (Williams) appeals from an order entered by the Fourth Judicial District Court, Missoula County, affirming the *304 Municipal Court of the City of Missoula’s denial of his motion to suppress blood evidence in a DUI proceeding against him. We affirm.
¶2 Williams presents the following issues for our review:

1. Whether the District Court erred in affirming a telephonic search warrant issued pursuant to § 61-8-402(5), MCA, to draw Williams’s blood.

2. Whether the District Court erred in failing to consider the merits of Williams’s contention that he did not receive the implied consent advisory prior to his blood draw.

FACTUAL AND PROCEDURAL BACKGROUND
¶3 On January 24, 2016, at 2:48 a.m., Missoula Police Deputy Jenna Volinkaty (Volinkaty) observed Williams speeding in a rental truck, lose control of the vehicle, collide with a utility pole and tree, and attempt to leave the scene. Using a radar device before the collision, Volinkaty measured Williams traveling between 50 and 55 miles per hour and another officer measured him traveling at 70 miles per hour and accelerating. The speed limit in the area is 30 miles per hour. Volinkaty smelled alcohol on Williams’s breath, saw that his eyes were glassy, watery, and bloodshot, his clothing was soiled, that he could not maintain his balance, and heard Williams slur his words. Volinkaty arrested Williams for suspected DUI. Williams admitted he had consumed alcohol, but refused to take an Intoxilyzer breath test. Volinkaty learned that in 2008, Williams was convicted of an alcohol-related driving offense under Arizona Revised Statute § 28-1381.
¶4 Volinkaty contacted Judge Marie Anderson to obtain a telephonic search warrant to draw Williams’s blood. In her affidavit, Volinkaty described seeing Williams speeding, travelling 50-55 miles per hour, losing control, and crashing into a utility pole at 2:48 a.m.; Williams being taken into custody after he attempted to flee; observing symptoms of his impairment including watery, bloodshot eyes, slurred speech, staggering movements, soiled clothing, and mood swings. Volinkaty also notified Judge Anderson that “the suspect has a prior conviction for DUI or substantially similar offense on 11/20/2008 in Arizona.” Judge Anderson authorized the issuance of the search warrant and Volinkaty executed it by having Williams’s blood drawn. Williams had a blood alcohol content (BAC) of 0.197.
¶5 The City of Missoula (the City) charged Williams with aggravated DUI pursuant to § 61-8-465, MCA; reckless driving pursuant to § 61-8-301, MCA; and refusing to submit to a blood or breath test pursuant to § 10.56.020 of the Missoula Municipal Code. Williams filed a motion to suppress the blood draw evidence arguing it was obtained pursuant to *305 a search warrant that relied on a previous conviction from Arizona that “does not qualify as a ‘similar’ offense under Section 61-8-402(5).” The Municipal Court denied Williams’s motion to suppress “concludlingl that the Arizona DUI conviction could be considered a ‘similar’ offense for purposes of seeking a telephonic search warrant.” In its order, the Municipal Court recognized, however, that under State v. McNally, 2002 MT 160, 310 Mont. 396, 50 P.3d 1080, the Arizona conviction could not be used to enhance Williams’s DUI sentence to a felony. Reserving his right to appeal the adverse determination on his motion to suppress, Williams pleaded no contest to aggravated DUI. The City dismissed the remaining two charges. The Municipal Court sentenced Williams to six months in jail with all but five days suspended and imposed a fine of $1,000.
¶6 Williams appealed the Municipal Court’s order denying his motion to suppress to Montana’s Fourth Judicial District Court, Missoula County, and made an additional argument that “Officer Volinkaty failed to include in her Affidavit of Probable Cause that she had read to [Williams] the Implied Consent Advisory and therefore information about his refusal is called into question.” The District Court affirmed the Municipal Court’s order denying Williams’s motion to suppress on the same grounds as the Municipal Court, concluding that the Arizona statute is “similar” to Montana’s DUI statute “for the purposes of being able to seek a telephonic search warrant under the auspices of Mont. Code Ann. §61-8-402(5).” The District Court declined to address Williams’s additional argument “|b lecause this issue was not previously raised and the municipal court had no opportunity to rule on the issue ....”
¶7 Williams appeals.
STANDARDS OF REVIEW
¶8 On appeal from a municipal court, the district court functions as an intermediate appellate court. Sections 3-5-303, 3-6-110, MCA; City of Bozeman v. Cantu, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461. When a district court acts as an intermediate appellate court, “[t]he appeal is confined to review of the record and questions of law, subject to the supreme court’s rulemaking and supervisory authority.” Section 3-6-110(1), MCA. Our review of the case is as if the appeal was originally filed in this Court and we examine the record independently of the district court’s decision. Stanley v. Lemire, 2006 MT 304, ¶ 26, 334 Mont. 489, 148 P.3d 643. This Court reviews a ruling on a motion to suppress evidence to determine whether the court’s findings of fact are clearly erroneous and whether the court’s interpretation and *306 application of the law are correct. State v. Marcial, 2013 MT 242, ¶ 10, 371 Mont. 348, 308 P.3d 69. Although we will review the municipal court record as if the appeal was originally filed in this Court, our disposition pertains to the order of the district court from which the appeal is taken.
DISCUSSION
¶9 1. Whether the District Court erred in affirming a telephonic search warrant issued pursuant to § 61-8-402(5), MCA, to draw Williams’s blood.
¶10 Williams challenges the legality of the search warrant application that allowed his blood to be drawn. Williams contends on appeal that, under McNally, Arizona and Montana’s DUI statutes are not “similar” and, without similarity, there was insufficient evidence to authorize a blood draw under § 61-8-402(5), MCA. Therefore, Williams concludes, “the search warrant was illegal and the blood draw results should have been suppressed.”
¶11 The City responds that McNally is distinguishable because it addressed “similarity” for sentencing purposes only, not for obtaining search warrants pursuant to § 61-8-402(5), MCA. The City also contends, based upon the statutory history of § 61-8-402(5), MCA, that Arizona and Montana’s DUI statutes are similar. The City concludes that construing Arizona and Montana’s DUI statutes as not similar would frustrate the Legislature’s intent when it authorized the drawing of a person’s blood pursuant to the provisions of § 61-8-402(5), MCA.
¶12 While we ultimately conclude that McNally is not dispositive of the issue before us, some discussion of McNally and its progeny are necessary to understand the legal inquiry required in assessing the similarity of another state’s statutes with ours and whether such an inquiry is appropriate in deciding if a search warrant should issue. The statute at issue in McNally was a sentencing enhancement statute, § 61-8-734(1)(a), MCA, which elevates a DUI offense to a felony if the offender has three or more prior convictions under certain Montana laws or “a similar statute or regulation in another state.” McNally, ¶ 11 (quoting § 61-8-734(1)(a), MCA). McNally was charged with a fourth or subsequent DUI after having previously received four Driving While Ability Impaired (DWAI) convictions in Colorado. McNally, ¶ 3. Because Colorado law provides a DWAI offense and Montana’s law does not, McNally argued on appeal that his prior convictions for DWAI “did not constitute previous convictions under a similar statute *307 for the purposes of enhancing Count I to Felony DUI under § 61-8-734, MCA,” and he could, therefore, “be sentenced only for a first offense DUI, a misdemeanor.” McNally, ¶ 3.
¶13 This Court conducted a careful review and comparison of the statutory scheme pertaining to alcohol-related offenses for both Colorado and Montana, which required consideration of the elements and degree of impairment for each state’s respective offenses. We agreed with McNally, differentiating between Colorado’s scheme of alcohol-related driving offenses, which provided for three offenses, DUI, DUI per se, and DWAI, and Montana’s, which only provided for two, DUI and DUI per se. McNally, ¶¶ 7-10. Reasoning that the standard of impairment contained in Colorado’s DWAI statute, which required impairment only to the “slightest degree,” was lower than the standard of impairment in Montana’s DUI statute requiring the driver’s ability be “diminished,” we determined “McNally’s prior convictions in Colorado do not constitute ‘convictionfs] for a violation of a similar statute ... in another state,’ as required under § 61-8-734(1)(a),MCA ....’’McNally, ¶¶ 18,22 (quoting § 61-8-734(l)(a), MCA). “[W]e concludefd] it was error to enhance McNally’s DUI conviction to a felony based on his convictions under Colorado’s DWAI statute.” McNally, ¶ 23. In sum, McNally held that Colorado’s DWAI statute is not “similar” to Montana’s DUI statute within the meaning of § 61-8-734(1)(a), MCA.
¶14 The Montana Legislature has also utilized the language, “similar statute,” relative to requirements for obtaining blood or breath tests where probable cause exists to suspect impaired driving. We begin with Montana’s statutory presumption of implied consent that “[a] person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent to a test or tests of the person’s blood or breath for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person’s body.” Section 61-8-402(1), MCA. However, if an arrested person refuses to supply a BAC sample, the “refused test or tests may not be given.” Section 61-8-402(4), MCA. Section 61-8-402(5), MCA, carves out an exception to this rule:
If the arrested person has refused to provide a breath, blood, or urine sample under 61-8-409 or this section in a prior investigation in this state or under a substantially similar statute in another jurisdiction or the arrested person has a prior conviction or pending offense for a violation of45-5-104 [negligent homicide], 45-5-106 [vehicular homicide while under the influence], 45-5-205 [negligent vehicular assault], 61-8-401 [DUI], *308 61-8-406 [DUI per se], or 61-8-411 [operating a vehicle under the influence of THC] or a similar statute in another jurisdiction, the officer may apply for a search warrant to be issued pursuant to 46-5-224 to collect a sample of the person’s blood for testing.
¶15 The Legislature added § 61-8-402(5), MCA, in 2011. Prior to its inclusion, the statute “did not permit law enforcement to apply for a search warrant in DUI cases if an arrested person refused to submit to BAC testing.” State v. Giacomini, 2014 MT 93, ¶ 10, 374 Mont. 412, 327 P.3d 1054. If an arrested person refused to submit to a blood or breath test “the refused test or tests [could] not be given ....” Section 61-8-402(4), MCA (2009). A blood sample could only be taken pursuant to a search warrant if probable cause existed that an offense other than the underlying DUI had occurred. Giacomini, ¶ 10 (citing Collins v. Dep’t of Justice, Div. of Highway Patrol, 232 Mont. 73, 78, 755 P.2d 1373, 1376 (1988)). The statutory framework was revised in 2011 by the Legislature’s passage of Senate Bill 42, which authorized law enforcement to apply for a search warrant for a blood draw where an arrested person refused to submit to BAC testing and had a prior conviction for any of the listed driving, alcohol-related driving, or drug-related driving offenses “or a similar statute in another jurisdiction.” The amended bill was explained by a proponent:
The question is: What do you do with these people who have figured out the game? That is—“If I refuse, they don’t have the evidence.” And you notice that the committee amended the bill for the repeat offenders just for that reason. Because there was a general idea that we shouldn’t do it for the first refusal. And what we got here is a bill to try to compel the person that fits the profile of the repeater to give evidence .... When you tell them “You either give us a breath test or we go to the judge and get a warrant [for your blood,]” they’re going to give you a breath test and that is the object of the exercise.[1]
¶16 This Court addressed a challenge to § 61-8-402(5), MCA, in Giacomini. Giacomini refused to submit to a breath test requested during a traffic stop. Giacomini, ¶ 4. Because Giacomini had refused to provide a BAC test in the past, law enforcement applied for and received a warrant to draw his blood pursuant to § 61-8-402(5), MCA. Giacomini, ¶ 5. On appeal, Giacomini argued that “his prior refusal of *309 a breath test [was] insufficient to establish probable cause to support a search warrant to draw his blood.” Giacomini, ¶ 12. In response, we noted that “[t]he revisions made to § 61-8-402, MCA, by Senate Bill 42 merely removed the statutory prohibition on seeking a search warrant for a blood draw ....” Giacomini, ¶ 13. We explained that an arrested person’s prior refusal does not by itself establish the necessary probable cause for a warrant, “but merely permits police to apply for a warrant” under § 61-8-402(5), MCA. Giacomini, ¶ 13. Aside from his prior refusal, there was a substantial basis to support the judge’s determination that probable cause existed in Giacomini’s case, including that he had driven the wrong way down a one-way street; had watery, bloodshot eyes; smelled like alcohol; swayed and staggered; and performed poorly on standard field sobriety tests. Giacomini, ¶ 13. Section 61-8-402(5), MCA, does not supply probable cause, but allows a mechanism to gather evidence against those who have either refused a test in the past or been charged with or convicted of various, but specifically enumerated offenses.
¶17 Here, Williams contends McNally is not limited to sentencing and asserts that “Itlhere is no meaningful distinction between the sentencing enhancement statute [§ 61-8-734(1), MCA,] and the telephonic search warrant application statute [§ 61-8-402(5), MCA]....” Pointing out that both Arizona and Colorado’s DWAI statutes include a threshold level of impairment described as to the “slightest degree,” Williams argues that Arizona and Colorado’s DWAI statutes are the same and, based on our holding in McNally, neither is similar to Montana’s DUI statute, which requires a driver’s ability to be “diminished.” Williams urges us to expand McNally and hold that because Montana’s DUI statute is not similar to Colorado’s DWAI statute, within the meaning of § 61-8-734(1), MCA, Montana’s DUI statute is also not similar to Arizona’s DWAI statute, within the meaning of § 61-8-402(5), MCA. While it is true that both statutes require convictions for “similar” offenses in order to justify either an enhanced sentence or the taking of a person’s blood, significant to resolving the underlying issue are well-established principles for reviewing the sufficiency of a search warrant application, which remain distinguishable from review of predicate convictions for purposes of sentencing and other aspects of the criminal trial. Hence, when reviewing the issuance of a search warrant pursuant to § 61-8-402(5), MCA, it is unnecessary for this Court to determine whether Arizona and Montana have “similar” DUI statutes as we did in McNally. Such an inquiry, which is entirely a question of law, is beyond review of the “facts” set forth within the four corners of the *310 application and otherwise necessary for a determination of probable cause.
¶18 Probable cause is required for a judge to issue a search warrant.
A judge shall issue a search warrant to a person upon application ... made under oath or affirmation, that:
(1) states facts sufficient to support probable cause to believe that an offense has been committed;
(2) states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found;
(3) particularly describes the place, object, or persons to be searched; and
(4) particularly describes who or what is to be seized.
Section 46-5-221, MCA. This Court follows the “totality of the circumstances” test set forth in Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317 (1983). State v. Reesman, 2000 MT 243, ¶ 24, 301 Mont. 408, 10 P.3d 83; overruled on other grounds by State v. Barnaby, 2006 MT 203, ¶ 42, 333 Mont. 220, 142 P.3d 809. Under this test, to determine if a search warrant should be issued, the judge evaluates the facts asserted within the four corners of the warrant application and makes a practical, common sense determination whether there is a fair probability that incriminating items will be found in the place to which entry is sought.[2] Reesman, ¶ 24 (citations omitted).
¶19 Williams does not dispute that he was convicted under Arizona Revised Statute § 28-1381 or argue that there were insufficient facts to demonstrate probable cause he was driving while impaired. Nor does Williams dispute the validity of Volinkaty’s observations. Williams’s entire argument is based upon Volinkaty’s inclusion in the affidavit of his prior Arizona conviction, which he maintains is not similar to any statute in Montana. Williams thus presents a challenge to the validity *311 of Volinkaty’s affidavit. We adopted the Franks procedure for challenging the validity of a warrant affidavit in State v. Sykes, 194 Mont. 14, 20, 663 P.2d 691, 695 (1983); overruled on other grounds by State v. Long, 216 Mont. 65, 69, 700 P.2d 153, 156 (1985). “[A] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter.” Franks v. Delaware, 438 U.S. 154, 165, 98 S. Ct. 2674, 2681 (1978). “There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.” Franks, 438 U.S. at 171, 98 S. Ct. at 2684. A “judge or magistrate is required to evaluate only the facts asserted within the four corners of a search warrant application. If inaccurate or misleading information is included in that application, it must be excised from the application regardless of whether that information was included mistakenly, negligently, or intentionally.” State v. Worrall, 1999 MT 55 ¶ 33, 293 Mont. 439, 976 P.2d 968 (citation omitted); overruled on other grounds by State v. Kasparek, 2016 MT 163, ¶ 12, 384 Mont. 56, 375 P.3d 372. “This Court’s only function is to ensure that the issuing judicial officer had a substantial basis to determine that probable cause existed” and we pay great deference to a magistrate’s determination. State v. Estes, 2017 MT 226, ¶ 24, 388 Mont. 491, 403 P.3d 1249 (citation omitted). “When the issuance of a search warrant is based in part on illegal information, the reviewing court shall excise the illegally obtained information from the application for search warrant and review the remaining information de novo to determine whether probable cause supported the issuance of a search warrant.” Estes, ¶ 24 (citation omitted). Significantly, § 61-8-402(5), MCA, does not alter how search warrants are to be issued and reviewed.
¶20 Our review, and that of the issuing judge, is constrained to the facts within the four corners of the affidavit and we decline to conduct a legal inquiry into the similarity of Montana’s statutes with those of Arizona. At a minimum, such an inquiry would require consideration of information not within the application and beyond the requirements for establishing probable cause. See Reesman, ¶ 24; § 46-5-221, MCA. Williams’s contention is based on a conclusion of law reached after conducting a legal analysis of the alcohol-related statutory schemes in Arizona, Colorado, and Montana, as well as specific statutory elements. The determination of whether two statutes are “similar” is not informed by facts contained within the affidavit which were observed by the officer in the commission of the alcohol-related offense and any *312 inquiry of statutory similarity for purposes of § 61-8-402(5), MCA, which is beyond the affiant’s averment that they are similar, is outside the four corners of the affidavit and unnecessary. Here, Volinkaty represented under oath that Williams had a prior conviction “for a DUI or substantially similar offense on 11/20/2008 in Arizona.” Neither Volinkaty nor Judge Anderson is compelled to conduct an exhaustive legal analysis into “similarity” of the statutes in order to meet the requirements of § 61-8-402(5), MCA, for issuance of a search warrant.
¶21 Finally, we would be remiss if we failed to note that conducting such an analysis would place an impractical or impossible burden on police officers and issuing judges prior to applying for or issuing a search warrant. Such a requirement would be time consuming and DUI investigations are time-sensitive by nature because the evidence of the offense metabolizes out of the driver’s bloodstream simply by the passage of time. We are also confident that if the Legislature is dissatisfied with our interpretation made here, it will exercise its authority and determine otherwise.
¶22 We conclude that conducting a “similarity” analysis of Arizona and Montana DUI statutes—a question purely of law—would go beyond the four corners of the affidavit. In the absence of inaccurate, misleading, or illegally obtained information, it was unnecessary to excise from the affidavit Volinkaty’s representations that Williams had a prior conviction in Arizona for DUI. The District Court did not err in denying Williams’s motion to suppress.
¶23 2. Whether the District Court erred in failing to consider the merits of Williams’s contention that he did not receive the implied consent advisory prior to his blood draw.
¶24 Williams argues generally that the warrant requirements were not met and that the City failed to demonstrate that they were met. Williams more specifically argues that Volinkaty failed to read the implied consent advisory. This failure, Williams argues, is fatal to the search warrant application’s validity. Williams also faults the District Court for failing to address this argument. The City responds that Williams failed to raise this issue in the Municipal Court and that issues raised for the first time on appeal are not addressed.
¶25 Those who operate a motor vehicle in the state of Montana have impliedly consented to submit to a blood or breath test for the purpose of determining the presence or amount of alcohol or drugs in their body. Section 61-8-402(1), MCA. “[D]ue process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer.” State v. Strand, 286 Mont. 122, 126, *313 951 P.2d 552, 554 (1997); overruled on other grounds by State v. Minkoff, 2002 MT 29, ¶ 14, 308 Mont. 248, 42 P.3d 223. This advisory, derived from principles of fairness and due process, is called the implied consent advisory.
¶26 “The rule is well established that this Court will not address an issue raised for the first time on appeal. The reason for the rule is that it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider.” State v. Gomez, 2007 MT 111, ¶ 21, 337 Mont. 219, 158 P.3d 442 (quotation and citations omitted). When the district court acted as an intermediate appellate court, we review the case as if the appeal was originally filed in this Court, examining the record independently of the district court’s decision. Stanley, ¶ 26.
¶27 Our review of the record reveals the only issue raised in the Municipal Court was whether “the blood evidence obtained pursuant to the search warrant should be suppressed because [Williams’s] previous conviction from Arizona does not qualify as a ‘similar’ offense under Section 61-8-402(5).” It is clear from the briefing in the Municipal Court, that the parties agreed that the implied consent advisory had been given. Both parties referred to Volinkaty providing an implied consent advisory to Williams prior to his refusing to provide a BAC sample. We conclude that whether Volinkaty supplied the implied consent advisory was not at issue in the Municipal Court and the District Court correctly declined to address the matter. For the same reason, we also decline to address Williams’s contention that the search warrant is invalid because Volinkaty failed to give him the implied consent advisory.
CONCLUSION
¶28 The decision of the District Court affirming the Municipal Court’s denial of Williams’s motion to suppress is affirmed.
CHIEF JUSTICE McGRATH, JUSTICES SHEA and BAKER concur.

 Authorize Warrants to Obtain Blood or Breath Test in DUI Cases, Second Reading of Senate Bill 42, 62nd Leg., at 1:24:30-1:25:23 (2011) (statement of Sen. Larry Jent), available at https://perma.cc/D3BN-XH3X.

 Notwithstanding the limitation on the issuing judge to the “four comers’ of the application, search warrants must be supported by probable cause—a different standard from preponderance of the evidence applicable to whether a conviction is valid for purposes of sentencing enhancement. State v. Maine, 2011 MT 90, ¶ 13, 360 Mont. 182, 255 P.3d 64; State v. Krebs, 2016 MT 288, ¶ 12, 385 Mont. 328, 384 P.3d 98. Probable cause, the standard upon which a search warrant may issue, is lower than a preponderance of the evidence, the standard required to establish the existence of prior convictions. Furthermore, probable cause is a less onerous standard than determining whether a prior conviction from a different state was pursuant to a “similar statute” for sentencing enhancement purposes. This Court will review a district court’s determinations of similarity to determine if its conclusions of law were correct as a matter of law. Our review under such circumstances is plenary. McNally, ¶ 5.