DA 20-0022

FILED

11/04/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0022

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 280N

ERIC VALLEJO,

        Petitioner and Appellant,

    v.

STATE OF MONTANA, DEPARTMENT OF
JUSTICE, MOTOR VEHICLE DIVISION,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-19-278
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Kai N. Purmann, Matthew B Lowy, Kathleen A. Molsberry,
Lowy Law, P.L.L.C., Missoula, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar,
Assistant Attorney General, Mariah Johnson, Student Intern,
Helena, Montana

            Jim Nugent, Missoula City Attorney, Doug Schaller, Deputy City
Attorney, Missoula, Montana

Submitted on Briefs:  October 21, 2020
Decided:  November 4, 2020

Filed:

                   _____
                             Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Eric Vallejo appeals from the order of the Fourth Judicial District Court, Missoula County, denying his petition for reinstatement of his driver's license. We restate and address the following issues on appeal: (1) Whether the District Court erred in denying the petition to reinstate Vallejo's driver's license; and (2) Whether Vallejo's due process rights were violated by a discrepancy in the date on the citation. We affirm.

¶3     On March 13, 2019, Vallejo filed a petition with the District Court to have his driver's license restored following an investigation of Vallejo driving under the influence (DUI). The investigation resulted in a criminal citation charging Vallejo with DUI and obstructing justice, and suspension of Vallejo's driver's license by the State of Montana, Department of Justice Motor Vehicle Division (Department).

¶4     At the hearing on Vallejo's petition, Sergeant Kazinsky of the Missoula Police Department testified that he was on patrol the evening of February 26, 2019, when he observed a vehicle operating without working brake lights. Sergeant Kazinsky stopped the vehicle and made contact with the driver, identified as Vallejo. Sergeant Kazinsky noticed Vallejo had "divided attention" and "just kinda stared off, just sat there, and I had to ask

2

him again for registration and insurance." Sergeant Kazinsky also observed Vallejo had "kind of a glaze or glassed-over look" in his eyes, slurred speech, and the odor of an alcoholic beverage emanating from his breath and body. During the encounter, Vallejo admitted he was driving home from a bar where he consumed "a couple of drinks."

¶5 Sergeant Kazinsky testified he dispatched Officer McLean for assistance in initiating a DUI investigation. Sergeant Kazinsky testified that once Officer McLean arrived, Vallejo got out of his car without being asked and became uncooperative. Sergeant Kazinsky also testified Vallejo declined to perform standardized field sobriety tests and submit to a preliminary breath test at Officer McLean's request, and later again refused to take a breath test at the jail. The officers obtained a search warrant for a draw of Vallejo's blood. Sergeant Kazinsky testified that prior to requesting a breath test from a person suspected of DUI, officers will read the person an advisory of Montana's implied consent law. Sergeant Kazinsky also testified the officers do not usually take the time to seek a search warrant for a blood draw if a person consents to a breath test.

¶6 During cross examination, defense counsel noted Vallejo's criminal citation, which had been signed by Officer McLean, stated that the DUI investigation occurred on February 23, 2019, but Sergeant Kazinsky had testified the investigation occurred February 26, 2019. When questioned about the discrepancy, Sergeant Kazinsky explained that "[o]ne of them's a mistake, either clerical or what it is. But based on my report, which I'm confident in the date that's on my report, I'm going to say that the event occurred on the 26th of February." Sergeant Kazinsky also noted on redirect that the citation provided it was issued "[o]n or before—so on or about the 23rd day of February . . . ."

3

¶7    Vallejo also testified.  He stated he received the citation the night of February 26, 2019, and was in custody until the morning of February 27, when he posted bail.

¶8    At the conclusion of the hearing, the District Court determined that

> the officer made a mistake when he was filling out this citation and that it really did occur on the 26th . . . .  [T]he answer is that clerical mistakes, as far as dates on charging documents, are de minimis and are not a material part of the change.  And so regardless of the officer's mistake on the citation, it really makes no difference.

The District Court subsequently denied Vallejo's petition for reinstatement upon finding the officers properly investigated and arrested Vallejo for DUI, and that he refused to participate in testing necessitating the issuance of a search warrant for a blood draw.

¶9    We review a district court's denial of a petition for reinstatement of a driver's license to determine whether its findings of fact are clearly erroneous and its conclusions of law are correct.  *Ditton v. DOJ Motor Vehicle Div.*, 2014 MT 54, ¶ 14, 374 Mont. 122, 319 P.3d 1268.  Findings of fact are clearly erroneous if they are not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been committed.  *Kummerfeldt v. State*, 2015 MT 109, ¶ 8, 378 Mont. 522, 347 P.3d 1233.

¶10   Whether a person's constitutional due process rights have been violated is a question of law of which our review is plenary.  *State v. Pyette*, 2007 MT 119, ¶ 11, 337 Mont. 265, 159 P.3d 232.

¶11   Vallejo first argues on appeal that the District Court erred in denying his petition to reinstate his driver's license.  Montana's implied consent law provides that "a person who operates a motor vehicle on roads of this state is deemed to have consented to a blood or

4

breath test to determine the presence of alcohol or drugs in his or her body." *Anderson v. State*, 2007 MT 225, ¶ 9, 339 Mont. 113, 168 P.3d 1042 (citing § 61-8-402(1), MCA). If a law enforcement officer's justified investigative stop ripens into probable cause to arrest based on events occurring after the initial stop, the officer may require submission to a breath or blood test pursuant to § 61-8-402(2), MCA. *See Indreland v. Mont. DOJ, Motor Vehicle Div.*, 2019 MT 141, ¶ 16, 396 Mont. 163, 451 P.3d 51; *Hulse v. DOJ, Motor Vehicle Div.*, 1998 MT 108, ¶ 40, 289 Mont. 1, 961 P.2d 75. *See also* § 46-5-401, MCA (authorizing law enforcement officer to make an investigative stop on the basis of particularized suspicion). "Probable cause for an arrest exists when the facts and circumstances within the arresting officer's personal knowledge are sufficient to warrant a reasonable person to believe that the suspect has committed an offense." *Hulse*, ¶ 13.

¶12 The investigating officer is required to inform the person of the potentially serious consequences of refusing a breath test and the due process rights to independent testing and post-testing hearings available to him. *State v. Simmons*, 2000 MT 329, ¶ 17, 303 Mont. 60, 15 P.3d 408. *See also City of Missoula v. Williams*, 2017 MT 282, ¶ 25, 389 Mont. 303, 406 P.3d 8 ("Due process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer.") (quotations and original alterations omitted). If, after being read the implied consent advisory, the driver carrying a Montana driver's license declines to consent to breath or blood testing, the investigating officer must seize the driver's license and forward it to the Department, "along with a report stating the basis for the testing request and the fact of refusal." *Anderson*, ¶ 9 (citing § 61-8-402(4),

MCA). The Department may then suspend the license for six months if it is that driver's first refusal or revoke the license for one year if it is a second or subsequent refusal. *Anderson*, ¶ 9.

¶13 A person whose driver's license has been suspended for failure to comply with Montana's implied consent law may file a civil petition challenging the license suspension or revocation in the district court in the county where the driver's arrest was made. Section 61-8-403(1), MCA. The district court must determine the merits of the petition after a hearing, limiting its inquiry to the enumerated issues of whether:

> (i) a peace officer had reasonable grounds to believe that the person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two and the person was placed under arrest for violation of [§] 61-8-401[, MCA] or [§] 61-8-465[, MCA];

> .   .   .

> (iv) the person refused to submit to one or more tests designated by the officer.

Section 61-8-403(4)(a), MCA.

¶14 Vallejo does not challenge the legality of the initial stop on appeal. Instead, Vallejo argues the State provided insufficient evidence that the officers had reasonable grounds to arrest him and require him to submit to a breath test.

¶15 Vallejo's argument ignores the presumption that "[t]he suspension of a driver's license is . . . correct, and the petitioner bears the burden of proving that the State's action was improper." *Ditton*, ¶ 14. *See also Indreland*, ¶ 13 ("[W]hen a driver challenges his license suspension under § 61-8-403, MCA, the driver bears the burden of proving the

6

State's action was improper by a preponderance of the evidence."). Furthermore, the district court, as the trier of fact, is in the best position to determine witness credibility and the weight to be given evidence and we will not substitute our judgment for that of the district court on appeal. *Ditton*, ¶ 33; *Seyferth v. DOJ, Motor Vehicle Div.*, 277 Mont. 377, 385, 922 P.2d 494, 499 (1996).

¶16 Vallejo presented no evidence at the hearing controverting Sergeant Kazinsky's testimony that Vallejo, after admitting to consuming alcohol, displaying signs of intoxication, and becoming uncooperative with the officers, was read an implied consent advisory and declined to undergo field tests and a preliminary breath test. Vallejo also failed to present evidence contradicting Sergeant Kazinsky's testimony that the officers placed him in custody and sought a search warrant for a blood draw instead. Clearly the officers' observations on the scene provided probable cause to make an arrest. The record demonstrates that Vallejo's second refusal to take a breath test was while in custody, which strongly signals he had previously been arrested. Finally, implicit within these facts is that Vallejo was made aware of his right to obtain a blood test. The officers had to obtain a search warrant to get the blood test. Moreover, he was given a blood test. Vallejo has failed to meet his burden of proof.

¶17 Vallejo also asserts that Sergeant Kazinsky's testimony was hearsay and therefore cannot be relied upon to support the revocation of Vallejo's driver's license. Hearsay is an out-of-court statement, made by one other than the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. M. R. Evid. 801(c). Hearsay is inadmissible absent a valid exemption or exception. M. R. Evid. 802.

7

¶18 Our review of the record reveals Sergeant Kazinsky did not testify about the contents of any out-of-court statement that would render any part of his testimony inadmissible hearsay. Rather, Sergeant Kazinsky testified to his personal observations of Vallejo's appearance and demeanor during the stop, his personal observations of Vallejo's interactions with Officer McLean, and his knowledge of the fact that a search warrant for a blood draw was obtained subsequent to Vallejo's refusal to submit to a breath test. We affirm the District Court's denial of Vallejo's reinstatement petition.

¶19 Vallejo next argues that he was denied due process during the reinstatement proceedings because the District Court permitted a trial based on the date discrepancy between Sergeant Kazinsky's testimony and the citation. We disagree.

¶20 "Once issued, a driver's license becomes a property interest that may not be suspended or revoked without the procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution." *Pyette*, ¶ 13. In the context of a driver's license suspension, due process requires that the driver be given notice and an opportunity for a hearing. *Pyette*, ¶ 13. Such notice "must be one reasonably calculated, under all the circumstances, to inform the affected party of the impending action and to give an opportunity to present objections." *Pyette*, ¶ 13.

¶21 The District Court considered Sergeant Kazinsky's explanation on cross-examination regarding the four-day date discrepancy between his testimony and the date stated on the citation. The District Court further concluded the date discrepancy was a result of a clerical error and was of no material significance to the proceedings. Vallejo's

8

own testimony demonstrates he understood when he received the citation and what was charged. We reiterate that because a district court is in the best position to observe the witness's demeanor during testimony, we will defer to the district court regarding matters of witness credibility and the weight to be accorded witness testimony. *Ditton*, ¶ 33. Vallejo's due process rights were not violated by the date discrepancy.

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶23 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE