FILED

09/28/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0505

DA 20-0505

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 249N

JOEL WALBERG,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Sixth Judicial District,
                    In and For the County of Park, Cause No.  DV-20-73
                    Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jami L.  Rebsom, Jami Rebsom Law Firm PLLC, Livingston, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney
          General, Helena, Montana

          Kendra Lassiter, Park County Attorney, Korin Ziegler, Deputy County
          Attorney, Livingston, Montana

                         Submitted on Briefs:  September 8, 2021

                              Decided:  September 28, 2021

Filed:

                           _____
                                   Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Joel Andrew Walberg (Walberg) appeals an October 8, 2020 order by the District Court, Sixth Judicial District, Park County, denying his petition for reinstatement of his driver's license. We restate and address the following issue on appeal: whether the District Court erred in finding sufficient probable cause for Walberg's arrest and denying reinstatement of his driver's license. We affirm.

¶3 A Montana Highway Patrol trooper arrested Walberg on May 22, 2020. Near dusk, the trooper had been driving behind Walberg on U.S. Highway 89 South. After the trooper witnessed Walberg's pickup truck, equipped with a slide-in camper, drifting over the highway centerline several times, he activated the overhead lights and spotlight in his patrol car.

¶4 Walberg proceeded without reaction for about 40 seconds, at which point the trooper turned on his siren to further alert Walberg he was being pulled over. The vehicles continued, siren blaring, for another 40 seconds or so before Walberg braked briefly and activated his right blinker to indicate he would pull over. The trooper turned off his siren.

¶5 At this point, a guardrail adhered to the road's shoulder and prevented Walberg from pulling over. The trooper turned his siren back on after one break in the guardrail where a dirt-track side road ascends from the river.

¶6 Twenty-five seconds or so after the guardrail ended, Walberg did as his blinker indicated and turned right into an RV campground. The dashcam video shows that about two and a half minutes, and no more than two and a half miles, had by then elapsed. During the arrest and in court argument and briefing, both parties referred to the distance as four miles. In any case, the trooper testified that the delay and perceived distance caused him to doubt whether Walberg's vehicle intended to stop. The trooper also testified that it looked from his perspective like Walberg's car door was quickly opening just after he parked.

¶7 Consequently, without yet approaching, the trooper ordered Walberg to exit the truck and commanded a shirt-over-head turnabout performance to demonstrate the lack of a gun in Walberg's waistband. Before beginning this performance, Walberg made a noticeable stumble that the trooper testified was characteristic of intoxication. After Walberg backpedaled toward the patrol car, the trooper handcuffed him and guided him to the back seat.

¶8 From here, the traffic stop proceeded as it might have had the trooper approached Walberg's car more routinely. The trooper asked Walberg whether he had any drinks that evening, to which Walberg responded, "like one beer," and the trooper questioned Walberg about his delay in noticing the lights and siren and stopping. Walberg said that he was unable to see the flashing lights due to his large camper. The trooper cited the break in the

3

guardrail as one spot Walberg could have stopped after his blinker was on, but this spot was a narrow, nearly U-turn slope. During this exchange the trooper observed what he testified were a strong odor of alcohol on Walberg, watery and bloodshot eyes, and slurred speech. The trooper told Walberg he was under arrest for "eluding" but that they also would need to do more tests regarding his sobriety when they reached the station.

¶9 At the detention center, Walberg exhibited signs of intoxication according to observational tests. The trooper recited for Walberg an advisory statement required by law and asked Walberg to submit to a breath test. Walberg refused.

¶10 The effect of this refusal was the suspension of Walberg's driver's license. This consequence is prescribed by § 61-8-402, MCA. Walberg subsequently initiated civil proceedings in Park County District Court to have his license reinstated, as permitted by § 61-8-403, MCA. Walberg argued in the District Court that his arrest for "eluding" was invalid and that the subsequent driving under the influence (DUI) investigation and evidence should thus be suppressed, preventing the suspension of his license.

¶11 The District Court disagreed and denied Walberg's petition. Walburg appealed to this Court. We affirm, noting that Walberg's arrest was predicated on adequate probable cause regarding intoxicated driving—probable cause that coincided with and was independent of any factors and circumstances regarding fleeing and eluding. His license suspension need only be supported by the intoxicated driving arrest, and the District Court did not err in finding that it was, regardless of Walberg's frustration with the inessential process over eluding.

¶12 We review a district court's denial of a petition for reinstatement of a driver's license to determine whether its findings of fact are clearly erroneous, and its conclusions of law are correct. *Ditton v. DOJ Motor Vehicle Div.*, 2014 MT 54, ¶ 14, 374 Mont. 122, 319 P.3d 1268. Findings of fact are clearly erroneous if they are not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been committed. *Kummerfeldt v. State*, 2015 MT 109, ¶ 8, 378 Mont. 522, 347 P.3d 1233.

¶13 Walberg's driver's license was suspended under § 61-8-402, MCA. This law addresses an effect of the privilege of driving on Montana's roads: people who do so impliedly consent to blood or breath tests to determine whether they have been driving while intoxicated. To be subjected to such tests, drivers must first be validly arrested after a patrol officer has probable cause to believe they have been driving while intoxicated. *Indreland v. Mont. DOJ, Motor Vehicle Div.*, 2019 MT 141, ¶ 17, 396 Mont. 163, 451 P.3d 51. After the arrest, the officer must advise the driver of the consequences that attach to refusing the breath or blood test. *State v. Simmons*, 2000 MT 329, ¶ 17, 303 Mont. 60, 15 P.3d 408; *City of Missoula v. Williams*, 2017 MT 282, ¶ 25, 389 Mont. 303, 406 P.3d 8. If the driver then refuses testing, his or her license is suspended under § 61-8-402(4), MCA. The driver can petition in a civil proceeding in district court to have the license reinstated. *See* § 61-8-403, MCA. There, the district court must limit its inquiry to three things: (1) whether the police officer had reasonable grounds to believe the person had been driving under the influence, (2) whether the person was arrested for DUI, and (3) whether

the person then refused to submit to the drug or alcohol test. *Indreland*, ¶ 18 (citing § 61-8-403(a)(i), (iv), MCA).

¶14 There is no disagreement that Walberg refused to submit to a drug or alcohol test after being arrested for intoxicated driving. Walberg takes issue with the validity of the arrest.

¶15 A typical district court proceeding on a license suspended under § 61-8-402, MCA, would analyze only the particularized suspicion for a DUI stop, whether probable cause for a DUI arrest arose, and subsequently whether the driver refused the test. In fact, as stated, the law expressly limits the court to this narrow scope.

¶16 Walberg's petition, however, was muddled by litigating the validity of the arrest for eluding that initially landed him in the back of the patrol car. This approach was a distraction. The civil proceeding for Walberg's license reinstatement is ultimately concerned only with the validity of his DUI arrest.

¶17 The trooper described ample observations and circumstances that would establish particularized suspicion for a DUI stop and later probable cause to make a DUI arrest: Walberg's car drifted over the highway centerline several times; Walberg appeared oblivious to 40 seconds of flashing lights behind him and appeared to take another 40 seconds to register the siren; Walberg stumbled as he stepped out of his vehicle; his speech was slurred; his eyes were bloodshot and watery; he smelled of alcohol; and he admitted some drinking. These facts are sufficient to demonstrate the elements of the § 61-8-403, MCA, test the District Court was required to assess, and the District Court's findings of fact and conclusions of law on these points were correct. We evaluate probable cause based

6

on whether the "facts and circumstances within the arresting officer's personal knowledge are sufficient to warrant a reasonable person to believe that the suspect has committed an offense." *Hulse v. Mont. DOJ, Motor Vehicle Div.*, 1998 MT 108, ¶ 13, 289 Mont. 1, 961 P.2d 75. The facts and circumstances above create sufficient probable cause for a DUI arrest. *See, e.g., State v. Hafner*, 2010 MT 233, 358 Mont. 137, 243 P.3d 435 (alcohol odor, slurred speech, glassy and bloodshot eyes); *City of Great Falls v. Morris*, 2006 MT 93, ¶ 22, 332 Mont. 85, 134 P.3d 692 ("poor driving, slurred speech, red eyes and the odor of alcohol"); *Jess v. Mont. DOJ, Motor Vehicle Div.*, 255 Mont. 254, 841 P.2d 1137 (1992) (swerving, erratic driving); *Anderson v. Mont. DOJ, Motor Vehicle Div.*, 275 Mont. 259, 912 P.2d 212 (1996) (stumbling walk, odor, failure to stop when requested); *Hulse*, ¶ 39 (crossing center line, field sobriety test results).

¶18 Notably, some of the above occurred prior to when Walberg parked, and some came after he was handcuffed for eluding. Walberg argues that the intervening arrest for having delayed pulling over was invalid and therefore should render his DUI arrest invalid because the subsequent evidence must be suppressed. The parties and the District Court thus spent much effort probing the validity of the arrest for evading. We spend less because Walberg's premise falls short.

¶19 Walberg roots his approach in the exclusionary rule, requiring that evidence that is the fruit of an invalid arrest must be suppressed in a criminal trial. *State v. Pearson*, 2011 MT 55, ¶ 24, 359 Mont. 427, 251 P.3d 152. There are two problems with applying this premise to Walberg's case: first, his petition for license reinstatement is not a proceeding at which the exclusionary rule necessarily applies; and second, even if it applied, the

7

evidence that constituted the probable cause for a DUI arrest was not inadmissible fruit of the arrest for eluding.

¶20 This Court has connected the rights that attach in a civil case over license suspension to "certain criminal procedural considerations" like the existence of probable cause and Fourth Amendment privacy issues. *Indreland*, ¶ 15; *see also Hulse*, ¶ 12. However, this Court has also previously declined to consider the applicability of evidentiary criminal trial rules like the exclusionary rule when the issue was not integral to the District Court's task. *Hulse*, ¶ 18; *see also Indreland*, ¶ 42 (Baker, J., concurring). Our approach is the same here. Walberg's case hinges on the claim that but for the trooper's citation for eluding, no probable cause for a DUI could arise. This argument ignores the trooper's reason for initiating the stop, the suspicions that arose prior to the trooper's interactions with Walberg, and the inevitability of the observations that followed.

¶21 The trooper had particularized suspicion to stop Walberg and investigate whether he was driving while intoxicated, stemming from his swerving truck and distracted conduct pre-stop. The trooper's subsequent observations of Walberg—the stumbling, slurred speech, smell, and admission—ripened particularized suspicion into probable cause. These observations may have occurred after the arrest for eluding, but they are not exclusively the product of that arrest. The DUI investigation arose from concurrent but also independent, pre-established grounds.

¶22 The law limits the District Court's inquiry to a specific question: whether a peace officer had reasonable grounds to believe that a driver was in actual physical control of a vehicle on Montana's public roadways while under the influence of alcohol, drugs, or both.

8

The District Court's order was correct on this matter, independent of Walberg's arrest for eluding.

¶23 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact were not clearly erroneous, and its conclusions of law were not incorrect.

¶24 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE